**George G. GRIFFON, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 85–4733.

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1986.

Barry M. Sax, Rockville, Md., for petitioner.

John C. Hoyle, Anthony J. Steinmeyer, Attys., Civil Div., U.S. Dept. of Justice, Ronald T. Osborne, Admin. Law Judge, Dept. of H.H.S. Departmental Grant Appeals Bd., Civil Money Penalties Hearing Office, Jerry Schoppin, John Meyer, Office of Gen. Counsel, Inspector Gen. Div., Dept. of H.H.S., Washington, D.C., for respondent.

Before CLARK, Chief Judge, and GOLDBERG and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

Petitioner George Griffon was fined $44,-000 by an Administrative Law Judge (ALJ) for submitting 22 false claims to the Louisiana Medicaid program. The fine was imposed pursuant to provisions of the Civil Monetary Penalties Law (CMPL), 42 U.S.C. § 1320a–7a (1983), and of the implementing regulations issued by the Secretary of the Department of Health and Human Services (HHS), 45 C.F.R. §§ 101.100–101.133 (1984). Griffon challenges the regulations and statute as applied to him. In particular, he challenges retroactive application of the CMPL to fraudulent acts committed before the effective date of the statute. Because the ALJ did not have the authority to address such challenges, the ALJ did not decide the issue. Griffon then appealed to obtain review of the ALJ's decision. We vacate that decision of the ALJ.

The central issue presented in this case is whether, in the absence of any dispositive congressional intent, the Secretary of the Department of Health and Human Services

(HHS) by regulation may sever and apply the procedural elements of the CMPL, thereby inferring and implementing congressional intent to apply the statute retroactively in part. Inferring the subjective intent of Congress when it has failed to speak is always fraught with peril; it is doubly hazardous when the appropriate canons of construction fire at cross-purposes. *See generally* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes Are to be Construed,* 3 Vand.L.Rev. 395, 401–06 (1950) (listing 28 pairs of equal and opposite rules of statutory construction). This case wages a conflict of first impression, which simultaneously sounds two canons: first, that in the absence of congressional intent, substantive legislation is to be given prospective application, and; second, that procedural legislation is to be given retroactive application. When a statute of mixed procedural and substantive character appears in the midst of the fray, no single rule reveals the faction to which it belongs.

Because Congress has failed to provide adequate indicators of its intent regarding retroactivity, severability, or the nature of the CMPL, regulatory severance of the procedural and substantive provisions creates congressional intent out of whole cloth. The Secretary initially purports to infer a general retroactive intent of Congress, by characterizing the statute as procedural. She then attributes congressional cognizance of the inferred Due Process concerns raised by the first and second canons to

subsequently infer that Congress would sever the statute, rather than apply it prospectively.

Such bootstrapping by progressively linked inferences is beyond the reach of any reasonable, interpretive powers. Although the power of an administrator to *interpret* the sources of her authority in order to effect congressional purposes is extremely broad, she cannot fictitiously create purposes to achieve specific results.[1] Some degree of interpretative contortion has a therapeutic effect on the law; too much contortion has a crippling effect. The Secretary here cannot simply fabricate a congressional intent to avoid concerns that otherwise would require inferred prospective application of a statute. We therefore nullify this administrative usurpation of the legislative prerogative to think clearly or not at all.

I. The Procedural History and the Standard of Review

On March 15, 1982, petitioner George Griffon was convicted of submitting 22 false claims to the Louisiana Medicaid program in 1979. Griffon, a pharmacist, had dispensed generic drugs to his customers under brand-name labels, and had submitted reimbursement claims based on brand-name drug prices. He was fined $110,000, $55,000 of which was characterized as restitution to Medicaid and $55,000 as a "criminal fine." The Louisiana Supreme Court affirmed the criminal conviction and sentence on February 27, 1984. *State v. Griffon,* 448 So.2d 1287 (La.1984).

---

1. Legal fiction is occasionally a useful and appropriate method by which to overwrite unforeseen or troublesome legal issues to achieve specific results. *See, e.g.,* L. Fuller, *Legal Fictions,* 9, 51 (1967); P. Bobbitt & G. Calabresi, *Tragic Choices* 24–28 (1978). It is inappropriate in this case.

Spurious interpretation is an anachronism in an age of legislation. It is a fiction.... Lieber points out that it is essentially legislation. Bryce calls it simply and plainly "evasion." It is, in truth, what we may call a *general* fiction. For if we look narrowly at the fictions by means of which the law has grown in the past, we may divide them into general fictions—fictions under which a gen-

eral course of procedure or general doctrines have grown up; and particular or special fictions—fictions which have enabled a new rule to grow up in particular cases. In the former class, along with spurious interpretation, one might put the *jus gentium,* natural law, and equity. Spurious interpretation, moreover, is a fiction which has done its legitimate work. Men have long seen that special fictions are unnecessary and unsuited to a developed system of law.
Pound, *Spurious Interpretation,* 7 Colum.L. Rev. 381 (1907) (footnotes omitted), *reprinted in* 4 *Southerland Stat. Const.* 31, 35–36 (4th ed. 1986). The Secretary here writes a special fiction.

On July 3, 1984, almost three years after passage of the CMPL, and almost ten months after the Secretary's regulations, the Deputy Inspector General (IG) for Civil Fraud notified Griffon that HHS intended to impose a $44,000 fine under the CMPL. The IG cited numerous aggravating factors for imposing the maximum fine, and referenced the Louisiana conviction for the claims upon which the CMPL penalty was to be based.

In a decision and order dated May 15, 1985, the ALJ imposed on Griffon the $44,000 fine for the 22 fraud counts. The ALJ found that the IG had shown by clear and convincing evidence that Griffon had knowingly submitted 22 false claims within the scope of 45 C.F.R. § 101.102, for which Griffon could have been held liable under the False Claims Act, 31 U.S.C. §§ 3729–3731 (1983). The ALJ also found that there were no mitigating and numerous aggravating factors, that Griffon had adequate notice of the penalties, that the maximum penalty was appropriate, and that an ALJ is not empowered to reach the validity of application of the statute. Petitioner appealed the ALJ's determination, pursuant to 42 U.S.C. § 1320a–7a(d), because the Secretary's regulations retroactively apply the statute to claims falsely submitted before enactment of the CMPL.[2]

■ The scope of our review of the Secretary's construction that the CMPL is to be applied retroactively in part is extremely limited. Administrators are accorded considerable deference to effectuate the purposes of statutes. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("a court may not substitute its own construction of a statutory provision for a *reasonable* interpretation made by the administrator of an agency. We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations 'has been consistently followed....' ") (quoting *United States v. Shimer,* 367 U.S. 374, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)) (footnotes omitted) (emphasis added); *see also Zenith Radio Corp. v. United States,* 437 U.S. 443, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Chemical Mfrs. Assoc. v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985).[3] A court of appeals can only invalidate an administrator's interpretation if that interpretation is unreasonable. *Chevron,* 104 S.Ct. at 2783.

## II. The CMPL

On August 13, 1981, Congress passed the CMPL, a civil statute providing monetary penalties for individuals who file false Medicare or Medicaid claims.[4] Congress passed the CMPL as an alternative proce-

---

2. Because we cannot permit partial retroactive application, we do not reach petitioner's other claims: that the fines were by nature criminal, rather than civil, and thus violated the *Ex Post Facto* clause of the U.S. Constitution; that the fines were not intended to supplement criminal convictions; and that the amount of penalty relative to the claim is so disproportionate as to deprive Griffon of Due Process. We also pretermit the question of whether, if the CMPL *as a whole* were intended to be retroactive, such application would violate Due Process. To decide this question would require yet another reasonableness determination, the reasonableness of the (inferred) Congressional retroactivity decision. *See* K. Davis, *Administrative Law Text,* § 5.05, 133 (3d ed. 1972).

3. *Chevron* was decided in relation to legislative rulemaking. Because we find that the Secretary's interpretation is unreasonable, there is no need to decide whether *Chevron* or a less exacting standard applies to interpretive rules. Further, because the distinction is not helpful, *see* note 10 *infra,* we prefer to avoid characterizing the Secretary's rule in order to reach this question. *But see American Medical Ass'n v. Heckler,* 606 F.Supp. 1422, 1441 (S.D.Ind.1985) (applying *Chevron* to a rule argued in the alternative to be interpretative).

4. The CMPL amended sections 1128 and 1128A of Title XI, Part A of the Social Security Act, 42 U.S.C. §§ 1320a–7, 1320a–7a (1983). The CMPL was passed under Title XXI, Subtitle A, Chapter 2 of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, 95 Stat. 357, 789–92 (1981) ("Other Administrative Changes" of "Provisions Relating to Medicare and Medicaid"). It appears at 42 U.S.C. §§ 1320a–7 and 1320a–7a (1986) (as amended). Only § 1320a–7a is of concern here.

dure to existing federal and state enforcement mechanisms, after determining that those mechanisms were inadequate to combat the increasing incidence of Medicare fraud.[5] The CMPL authorizes the Secretary of HHS to impose penalties of up to $2,000 per claim and double the claim amount on any person who presents or causes to be presented a claim or claims that the person knew or had reason to know was not provided for by statute or regulation.[6] These sanctions expressly apply "in addition to any other penalties that may be prescribed by law...." 42 U.S.C. § 1320a–7a(a) (1983). The statute further provides that, in determining the amount of the penalty, the Secretary shall take into account "(1) the nature of claims and the circumstances under which they were presented, (2) the degree of culpability, history of prior offenses, and financial condition of the person presenting the claims, and (3) such other matters as justice may require." 42 U.S.C. § 1320a–7a(c) (1983).

The CMPL's provisions generally track the civil penalty provision of the False

---

**5.** What little legislative history exists focuses on the fact that the Secretary is left without adequate statutory resources to combat fraud if the Department of Justice refuses to prosecute.

Current law establishes criminal penalties for persons convicted of committing specified fraudulent acts under medicare and medicaid.... Current law also requires the Secretary to suspend from medicare any practitioner convicted of a criminal offense and.... allows the Secretary to exclude from medicare individual practitioners or providers that knowingly or willfully make or cause to be made any false statements in an application for payment.... U.S. Attorneys may refuse to accept medicare and medicaid fraud cases for any number of reasons.... Under present law, when a decision is made not to accept a case for prosecution the only recourse for the Government is to attempt recovery of the overpayment involved.... The bill authorizes the Secretary of HHS to assess a civil monetary penalty of up to $2,000 per claim against any person who he determines has filed a fraudulent claim under the medicare or medicaid programs.... Persons subject to a penalty would be given written notice and an opportunity for a hearing on the record prior to imposition of a penalty. S.Rep. No. 139, 97th Cong., 1st Sess. 461–62 (1981), *reprinted in* 1981 U.S. Code Cong. & Ad. News 727–28. OBRA, Summary of Senate Finance Committee Recommendations on Reconciliation, General Explanation, Authority for the Secretary to Impose Civil Money Penalties in Cases of Medicare and Medicaid Fraud). Prior to the CMPL, the Secretary lacked any independent authority to pursue fraudulent claim-filers.

Due to a large volume of cases [at the Department of Justice].... such criminal penalties have proved an ineffective deterrent to fraudulent practices under medicare and medicaid. The Secretary is currently authorized to impose a civil money penalty only in cases where such a penalty has been recommended by a Professional Standards Review Organization.

H.R.Rep. No. 97–158, 97 Cong., 1st Sess., vol. III, 327 (1981).

The CMPL thus was "intended to provide an alternative to criminal proceedings so as to increase the effectiveness of enforcement in the medicare and medicaid programs ... [and] to provide the Secretary [of Health and Human Services] with additional flexibility in pursuing cases of fraud under the programs." H.R.Rep. No. 97–158, 97th Cong., 1st Sess., vol. II, 344 (1981); *see also* H.R.Rep. No. 97–158, 97th Cong., 1st Sess., vol. III, 329 (1981).

**6.** Any person (including an organization, agency, or other entity) that—

(1) presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency (as defined in subsection (h)(1) of this section), a claim (as defined in subsection (h)(2) of this section) that the Secretary determines is for a medical or other item or service—

(A) that the person knows or has reason to know was not provided as claimed, or

(B) payment for which may not be made under the program under which such claim was made, pursuant to a determination by the Secretary under section 1320a–7, 1320c–9(b), or 1395y(d) of this title, or pursuant to a determination by the Secretary under section 1395cc(b)(2) of this title with respect to which the secretary has initiated termination proceedings; or

(2) presents or causes to be presented to any person a request for payment which is in violation of the terms of (A) an assignment under section 1395u(b)(3)(B)(ii) of this title, or (B) an agreement with a State agency not to charge a person for an item or service in excess of the amount permitted to be charged.

shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $2,000 for each item or service. In addition, such a person shall be subject to an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim.

42 U.S.C. § 1320a–7a(a) (1983).

**150**

Claims Act (FCA), 31 U.S.C. § 3729 (1983).[7] The CMPL thus provides an administrative alternative to the FCA and to maximum criminal penalties of $25,000, five years imprisonment, or both, for persons convicted of specified fraudulent acts, including the filing of false Medicare and Medicaid claims, under 42 U.S.C. § 1395nn(c) (1983). The major difference of the CMPL from the FCA is that the CMPL provides the Secretary with an enforcement mechanism independant from prosecution by the Department of Justice in federal court. In addition, the CMPL creates new substantive liability if a claim-filer "has reason to know" that her claims are false, and changes the forum in and the evidentiary burdens by which the claims are prosecuted.

7. The Secretary noted, in final implementing rules, that "[s]ection 1128A is closely modeled on that statute." 48 Fed.Reg. 38,828 (1983). The legislative history of the CMPL does not reference the FCA, notwithstanding the obvious similarity of their provisions. The legislative history, moreover, makes clear that the CMPL was intended as a civil alternative to existing *criminal* enforcement mechanisms. The FCA is a *civil* liability statute.

8. It is unclear whether these rules are interpretative or legislative rules, conveying the retroactive intent of Congress or the retroactive intent of the Secretary pursuant to her statutory authority. Interpretative rules do not require notice and comment rulemaking, 5 U.S.C. § 553(b)(3)(A), and cannot be retroactive because they effectuate the intent of the statute. Because this distinction, like many in administrative law, is wholly formal and often incoherent, it cannot form the basis for our decision on the reasonableness of the Secretary's decision to apply the CMPL retroactively. *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 985 n. 30 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), clarifies this point:
   [I]t seems unrealistic to suppose that many interpretative regulations merely express the one correct and intended interpretation of the statute under which they were promulgated. Many interpretative regulations will make explicit the answers to questions that Congress did not anticipate.... Professor Davis writes: "[A] significant portion of what is called 'interpretation' is not interpretation at all but is in truth creative law making...." K. Davis, *Administrative Law Text,* § 5.05, 135 (3d ed. 1972). By the same token, however, even legislative regulations must be consistent with the statute under which they were promul-

On December 30, 1982, the Secretary of HHS promulgated proposed rules for implementing the statute by notice and comment in the Federal Register.[8] 47 Fed. Reg. 58,309 (1982). Two years after the statute was enacted, the Secretary adopted the final rules, to be effective September 26, 1983. 48 Fed.Reg. 38,827 (1983) (codified at 45 C.F.R. §§ 101.100–101.133 (1984)). The Secretary recognized that Congress did not specifically make 42 U.S.C. § 1320a–7a retroactive, but she inferred that Congress intended retroactive application from the fact that the CMPL "was conceived as an alternative remedy to criminal prosecution of cases of fraud, which were not being prosecuted." 48 Fed. Reg. 38,828 (1983).[9] Attempting to avoid

gated.... Although the distinction has considerable utility for some purposes, that one regulation is denominated legislative in character and another interpretative in character contributes little to an understanding of whether each ought to be applied retroactively.

9. The Secretary also inferred that an estimated savings projection of $7 million for fiscal 1982, which began two months after enactment, provided some indication of retroactive intent. *Id.* HHS contends that "the estimated savings refers to the years in which formal action under law is taken, not to the years in which the claims were submitted." Brief for Respondent at 18. This "interpreted" referent to an inferred intent thus purports to form an alternative ground for partial retroactive application.

The Secretary's construction is not persuasive. The CMPL was passed in a budget bill. The savings provisions clearly relate to program expenditures, which could only accrue after passage of the bill. The further inference of statutory retroactivity from program expenditure savings based on the time of enforcement actions, rather than on the time of claim, has no legislative referent in the CMPL or related OBRA estimated savings projections. Because this construction also is irrelevant, we need not decide that an interpretive violation of the principles of physics, finance, and logic (*viz.* that one can get something from nothing) constitutes "reasoned decisionmaking" according to some intelligible principle. *See, e.g., Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 103 S.Ct. 2246, 2255–56, 76 L.Ed.2d 437 (1983).

The Secretary's inference of retroactivity from the savings provision is impaled on the horns of a constructive dilemma. Such a minimal indici-

the Due Process problems that might arise from wholesale retroactive application of the CMPL, 48 Fed.Reg. 38,828–29 (1983), the Secretary enacted 45 C.F.R. § 101.-114(b) (1984). Section 101.114(b) permits the retroactive application of the CMPL *only* to conduct that would have violated the FCA at the time of the submission of the false claim, and conforms evidentiary burdens to the FCA.[10] The effect of the regulations is to insure that liability is imposed only on those who had notice that their conduct was illegal, albeit under a different statute, and that no substantive right pertaining to such illegal conduct is altered, amended, or abrogated.

## III. Unreasonable Characterization of the CMPL for Retroactivity Purposes

■ Because of the deafening congressional silence regarding retrospective application, this interpretive conflict is controlled by the characterizations attributed to the CMPL. It appears that Congress generally intended the CMPL to be a procedural, civil alternative to ameliorate the pattern of underenforcement of criminal statutes. Because of the similarity of their provisions, it is not wholly unreasonable to adopt the Secretary's interpretation that the CMPL was also intended to provide a procedural alternative to the FCA. Most of the CMPL provisions are procedural. However, the CMPL enlarged the scope of substantive liability, allowing prosecution of those who "had reason to know" that their claims were not provided for. Whether this substantive change so colors the nature of the Act as to make the CMPL

substantive law for retroactivity purposes is the question before us.

Little guidance exists on whether the statute as a whole can be characterized as procedural. In somewhat similar circumstances, this court concluded that the congressional purpose in shoring up the enforcement mechanisms of the Shipping Act of 1916, 46 U.S.C. § 801 *et. seq.* (1970), was procedural and remedial in nature. In *United States v. Blue Sea Line*, 553 F.2d 445 (5th Cir.1977), we faced the question whether the government could bring a criminal prosecution under a repealed statute for acts antedating the statute's repeal, as Congress had replaced the statute's criminal sanctions with civil penalties and transferred jurisdiction of some claims to an administrative commission. Affirming the district court's dismissal of the indictment and holding the amendments applicable to pre-amendment violations, the court described congressional intent as follows:

By these changes Congress hoped to strengthen enforcement of the Shipping Act's commands. The government's reduced burden of proof in civil penalty proceedings would simplify documentation of violations, increasing the likelihood of successful prosecution and diminishing the delay between violation and penalty. Both these consequences would tend to increase the Act's deterrent impact without altering the substance of the Act's penalties. Additionally, by authorizing Maritime Commission compromise of civil penalties, the 1972 amendments provided a tool for reducing

---

um of intent either would not be sufficient to construe retroactivity as a matter of law, or would do so wholesale, because the intent to retroactively sever substantive and procedural application does not appear in the estimated savings clause. If the intent to retroactively sever is inferred from other parts of the statute, then the savings clause becomes irrelevant and reliance on it circular. Because, as we discuss below, severance cannot be implied simply to avoid problems of wholesale retroactivity, the Secretary cannot rely on the savings clause to uphold the regulations.

**10.** 45 C.F.R. § 101.114(b) (1984) provides:

To the extent that a proposed penalty and assessment is based on claims presented before August 13, 1981, the Inspector General must prove by clear and convincing evidence that

(1) The respondent presented or caused to be presented such claims as described in § 101.102; and

(2) Presenting or causing to be presented such claims could have rendered respondent liable under the provisions of the False Claims Act, 31 U.S.C. 3729 *et seq.*, for payment of an amount not less than that proposed.

duplicative Justice Department review and expensive federal litigation.

.　　.　　.　　.　　.

Congress was clearly not engaged in ameliorating criminal punishment in adopting the 1972 amendments. On the contrary, its concern was to tighten enforcement of the existing monetary sanctions. The chosen mechanism was a shift in "forum", from the criminal docket of the district courts to the halls of the Maritime Commission and, where necessary, the civil docket of the district courts. An important consequence of the shift, emphasized in the legislative history, was to reduce the Government's burden of proof.

553 F.2d at 447, 450 (citations omitted). Given this characterization of Congressional intent, the court in *Blue Sea Line* concluded that the amendments were "overwhelmingly procedural in nature." *Id.* at 450.

The Supreme Court has also treated as "procedural" a complete shift in the forum for adjudicating a particular type of claim. In *Hallowell v. Commons*, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916), the plaintiff claimed to be the sole heir of a member of the Omaha Indian tribe. Hallowell had filed suit in district court to establish his right to land the United States previously had held in trust for the decedent. While the suit was pending, Congress had removed jurisdiction over such claims from the district court and had given to the Secretary of Interior the power to ascertain the legal heirs. The court concluded that the statute had immediately divested the district court of jurisdiction, reasoning that "the reference of the matter to the Secretary ... takes away no substantive right, but simply changes the tribunal that is to hear the case." 36 S.Ct. at 203.[11]

In *Alexander v. Robinson*, 756 F.2d 1153 (5th Cir.1985), we characterized as procedural an allegedly retroactive application of the food stamp statutes pursuant to regulations issued by the Secretary of Agriculture. Section 113 of the 1981 Omnibus Budget Reconciliation Act provided that states should recover nonfraudulently overissued coupon amounts by reducing monthly allotments to the overissued household. A plaintiff class challenged the implementing regulations, which offset overissuances that occurred before the effective date of the regulations. After determining that the regulations applied the statute prospectively,[12] the court characterized the provision as procedural. Because § 113 was a "new collection tool [that] allowed [the government] to reduce current benefits to offset existing indebtedness," that would have arisen under 1977 *regulatory* reimbursement provision, § 113 was "procedural or remedial in nature and may be applied retroactively." *Id.* at 1156 (footnote omitted).

We are unable to locate any case characterizing the CMPL, for purposes of retroactivity or otherwise. But the canons of retroactive construction themselves provide the artillery for our assault on the walls that hide congressional intent. It is beyond cavil that, as a general rule, legislation must be applied prospectively. In *Union Pacific Railroad Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 34 S.Ct. 101, 58

---

11. *See also Crane v. Hahlo*, 258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514 (1922) (transfer of eminent domain proceedings from court to administrative body did not impair vested rights); *Montana Power Co. v. Federal Power Comm'n*, 445 F.2d 739, 747 (D.C.Cir.1970) (en banc) ("when all that is involved is a change in tribunal, when a determination by a court is replaced by a final determination, subject only to limited court review, of a board of officials ... or arbitrators ... the change in remedy does not partake of impairment of 'vested rights.'"), *cert. denied*, 400 U.S. 1013, 91 S.Ct. 566, 27 L.Ed.2d 627 (1971).

12. The court focused on Congressional intent regarding implementation dates, rather than on pre-enactment dates. Further, the court found that § 113 did not address existing substantive liability for overissuance before implementation, and that current offsetting of existing, current indebtedness, *even though* such indebtedness was premised on antecedent facts, was prospective. The court thus did not directly discuss retroactive application to pre-enactment liability. *Id.* at 1155 & n. 5.

L.Ed. 179 (1913), the Supreme Court declared:

> the first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice, and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed. The rule has been expressed in varying degrees of strength, but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights, or by which human action is regulated, unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."

*Id.* 34 S.Ct. at 102 (quoting *United States v. Heth*, 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806)) (citations omitted). See *also, United States v. American Sugar Refining Co.*, 202 U.S. 563, 26 S.Ct. 717, 719, 50 L.Ed. 1149 (1906) (presumption against retrospective operation absent "clear, strong, and imperative" language in statute indicating retroactive intent) (quoting *Heth*, 7 U.S. (3 Cranch) at 413); *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964). This principal has existed at least since the dicta of Chancellor Kent.[13]

The "first rule of construction" has been followed and applied in this Circuit. In *United States v. Winters*, 424 F.2d 113 (5th Cir.1970), this court stated:

> It would be most presumptuous for a court to assume Congress meant to allow retroactivity by indirection, in the face of the established presumption which requires that only prospective operation be given every statute which changes estab-

lished rights unless retroactive application is the unequivocal and inflexible import of the terms of the legislation and the manifest intention of the legislature.

*Id.* at 116 (citing *Greene*). The rule must be applied where retroactive application of a statute would either upset "vested" rights or interfere with settled expectations that guided an individual's conduct. "Retroactive application of laws is undesirable where advance notice of the change in the law would motivate a change in an individual's behavior or conduct." *Alexander*, 756 F.2d at 1156.

In *Winfree v. Northern Pacific Railway Co.*, 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1913), the Court refused to apply the Federal Employers Liability Act retroactively because the new act deprived the defendant of defenses upon which it had relied. In *Greene*, 84 S.Ct. at 621–22, the Supreme Court held that a government employee's right to restitution for wrongful discharge had "matured" under a 1955 regulation, and that a subsequent regulation could not be applied to defeat that right. In *United States v. Fernandez-Toledo*, 749 F.2d 703 (11th Cir.1985), the court refused to retroactively apply the creation of a governmental appeal right under the Bail Reform Act, as to do so would disturb the defendant's already "vested" right to bail.

The Secretary here contends that "[t]he change that was brought about by the application of the CMPL, rather than the False Claims Act, to Griffon's conduct is ... an administrative hearing by an ALJ rather than ... a proceeding in federal district court.... This procedural change does not interfere with any of Griffon's legal rights." Brief for Respondent at 15.[14] Because the application of the CMPL

---

13. 1 Kent, *Commentaries* 454 (3d Ed.1836).

14. Petitioner, by contrast, argues that the retroactive application of the CMPL defeats substantive rights because it creates liability where none existed before, that is, where a person "has reason to know" that a claim is false. Brief for Petitioner at 14–16, 25–27. Thus, as did the statute in *Winfree*, 33 S.Ct. at 274, the retroactive application of the CMPL "permits recovery in cases where recovery could not be had before" and should, therefore, operate prospectively only. Had this "reason to know" standard formed the basis of petitioner's liability in this case, the inference of prospectivity would be immediately required.

The alleged difficulty with petitioner's argument is that the basis for *petitioner's* liability and the burdens of proof *in this case* existed prior to the passage of the CMPL, so that the

is procedural in nature, the Secretary counters the first rule of construction with an opposing canon:

"Granting [the application of the 'first rule of construction,'] that canon of construction must yield to the rule here controlling that changes in statute law relating only to procedure or remedy are usually held immediately applicable to pending cases, including those on appeal from a lower court. This last mentioned rule of statutory construction defers only to a contrary [Congressional intent]." *Turner v. United States,* 410 F.2d 837, 842 (5th Cir.1969).

*United States v. Vanella,* 619 F.2d 384, 385–86 (1980). The Government therefore argues that, apart from the new culpability standard, the CMPL affects procedure or remedy only and should therefore be given retroactive effect. Since the regulation applies retroactively only those procedural and remedial aspects of the CMPL, the Government argues that the regulation is fully in accord with the statute. We cannot agree.[15]

Characterization of a statute does not depend on its particular application, but on its very nature. *Winfree,* 33 S.Ct. at 274 ("Such defenses the statute takes away, and that none may exist in the present case is immaterial. It is the operation of the statute which determines its character."). That retroactive application of the liability provisions of the CMPL to a plaintiff who lacked actual knowledge of the fraudulent nature of his claims *could* affect vested rights and result in manifest injustice cannot reasonably be disputed. Such a plaintiff would likely, given notice of those provisions, take greater care to avoid "reason to know" liability. Thus, the *liability provisions* of the statute must be considered substantive for retroactivity purposes. The first rule of construction therefore forbids, in the absence of *explicit* congressional intent, retroactive application of CMPL liability.

The Secretary, however, would have us find that *Congress* intended to sever the liability provisions from the procedural provisions and to apply only the latter retroactively. Because Congress has not explicitly stated any such intent, we would have to attribute three levels of congressional intent to adopt the proposition. First, Congress would need a general intent to retroactively apply the statute. Second, because the substantive provisions could not be applied retroactively *absent* explicit intent, Congress would need to have intended *not* to apply those provisions retroactively. Third, Congress would need to have intended to apply the remaining provisions retroactively.

Assuming *arguendo* that Congress intended the statute as a whole to be applied retroactively, there is no indication that Congress intended the statute to be severed to avoid these substantive retroactivity difficulties. There is no indication in the legislative history that Congress was aware of the potential Due Process concerns that might arise were the CMPL to be applied retroactively. No severance clause exists in the amendments to 42 U.S.C. §§ 1320–7 and 1320–7a. The only reason to imply such severance is to circumvent the mandated conclusion that the

petitioner was on notice that his acts were unlawful at the time he committed them. Application of the CMPL under these circumstances can produce no manifest unfairness because advance notice of the *applied* provisions would not have changed Griffon's conduct nor substantive rights.

**15.** We refuse to engage in the logical fallacy of adopting the negative pregnant to the proposition that "an administrative agency cannot apply a new rule [or "legislatively" interpret a statute] retroactively when to do so would unduly intrude upon reasonable reliance inter-

ests." *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 2224 n. 12, 81 L.Ed.2d 42 (1984) (citing cases). For this reason, *Fernandez-Toledo,* 749 F.2d at 705, provides limited guidance. Although *Fernandez-Toledo* specifically addressed retroactive application of mixed procedural and substantive amendments, the characterization of the procedures and refusal to apply the governmental appeal right retroactively were based on a finding that manifest injustice had resulted. Fairness is irrelevant when the Secretary lacks the power to so misconstrue the statute.

statute is substantive for retroactivity purposes. No legislative history warrants the inference of a congressional intent to circumvent the natural constructions of its actions or the judicial canons of statutory interpretation.

Further, if the Secretary were to infer severance on the principle that portions of the statute would otherwise be prospective, she would be bound by judicial principles for construing an intent to sever. " 'Unless it is evident that the legislature would not have enacted those provisions which are within its power' independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (quoting *Champlin Refining Co. v. Corporation Comm'n*, 286 U.S. 210, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932)); *see also Immigration & Naturalization Service v. Chadha*, 286 U.S. 210, 103 S.Ct. 2764, 2774–76, 76 L.Ed. 1062 (1983). Were the procedures applied retroactively and the substance applied prospectively, as implied by the Secretary's argument that the CMPL was designed as a procedural alternative to the FCA, there would be no liability *under the CMPL itself* on which the Secretary could retroactively proceed. Rather, the Secretary would have to imply an intent to conjoin the procedural elements of the CMPL with the substantive provisions of the FCA in the same cause of action, which is nowhere mentioned in the legislative history. Alternatively, for there to be some part left of the CMPL that could be "fully operative as law," the Secretary would be required to further imply a Congressional intent to sever the liability provisions from themselves. Again, there is no such indication of Congressional intent.

Although *Chevron* limits our ability to substitute our judgment for that of the Secretary, nothing in *Chevron* permits or implies support for the proposition that an administrator can call black white, nor that the courts are rendered impotent to prevent administrative mysticism. Rather than draw our own inferences, from simple logic, that the Secretary's construction is

unreasonable because conjury cannot be permitted to overwrite the administration of government, our hand is guided by the Constitution as applied by our judiciary.

The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute is a mere nullity. *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936) (citations omitted). This constitutional moral holds especially true when Congress has not spoken. *See generally* Stewart, *The Reformation of American Administrative Law*, 88 Harv.L.Rev. 1669, 1677 n. 27 (1975) (listing "[t]he factors responsible for this lack of [Congressional] specificity").

In sum, the CMPL is, at least for retroactivity purposes, a substantive statute. As such, it falls within the rule of *Union Pacific* to be applied prospectively absent unequivocal Congressional intent. Lacking such intent or any intent to sever the statute, the CMPL cannot be applied retroactively in part, and the Secretary cannot characterize the CMPL to do so.

Conclusion

While we applaud both the motives and the legal ingenuity of the Secretary, we cannot allow her to perform "creative and imaginary statutory surgery" on the CMPL by prescribing 45 C.F.R. § 101.114(b). *Bowsher v. Synar*, — U.S. —, 106 S.Ct. 3181, 3193, 92 L.Ed.2d 583 (1986). The CMPL was not designed to be partially retroactively applied, regardless of the lack of unfairness to petitioner Griffon. Because the Secretary's regulations, as promulgated, exceed her authority, they cannot be given effect. As a result, prosecution of Griffon under the CMPL should not

have occurred. For the above reasons, the judgment against Griffon is VACATED.