Donald O. **BERNSTEIN,** Petitioner,

v.

Louis W. **SULLIVAN,** Secretary, Department of Health and Human Services, Respondent.

No. 89-9528.

United States Court of Appeals,
Tenth Circuit.

Sept. 18, 1990.

Rodney W. Snow of Dixon & Snow, P.C., Denver, Colo. (Lee D. Foreman and Saskia A. Jordan of Haddon, Morgan & Foreman, P.C., Denver, Colo., with him on the brief), for petitioner-appellant.

Katherine S. Gruenheck (Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., and Anthony J. Steinmeyer, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., with her on the brief), for respondent-appellee.

Before MOORE and McWILLIAMS, Circuit Judges, and BRATTON, Senior District Judge.[*]

---

[*] Honorable Howard C. Bratton, Senior District Judge for the District of New Mexico, sitting by designation.

McWILLIAMS, Circuit Judge.

This is a petition for review of a final decision of the Secretary of Health and Human Services holding Dr. Donald O. Bernstein, a chiropractor, liable under the Civil Monetary Penalties Law (CMPL) for submitting false claims for Medicare reimbursement. 42 U.S.C. § 1320a–7a. Jurisdiction is based on 42 U.S.C. § 1320a–7a(e).

The Secretary's decision imposed a civil monetary penalty on Dr. Bernstein in the sum of $49,200.00 and an additional assessment of $2,742.40. The principal issue in this proceeding is whether a six-year statute of limitations set forth in 42 U.S.C. § 1320a–7a(c)(1) applies to the Secretary's proceeding against Dr. Bernstein. A review of the statutory scheme of the CMPL and the facts of Dr. Bernstein's case will place that issue in focus.

On August 13, 1981, Congress enacted the CMPL, a statute providing for civil monetary penalties and assessments for individuals who file false Medicare or Medicaid claims. 42 U.S.C. § 1320a–7a(a)(1)(A). Such were "in addition to any other penalties that may be prescribed by law...." 42 U.S.C. § 1320a–7a(a). The CMPL also provided that upon conviction a false claimant would be excluded from continued participation in the Medicare and Medicaid programs. 42 U.S.C. § 1320a–7a(a).

The CMPL, as enacted in 1981, was intended to promote an administrative adjunct to criminal proceedings as an additional means of sanctioning persons who submit false claims for payment under the Medicare and Medicaid programs. A proceeding under the CMPL to impose penalties and assessments for fraudulent submission of claims against Medicare is a civil proceeding, not a criminal or quasi-criminal proceeding. *Chapman v. United States Dep't of Health & Human Services*, 821 F.2d 523 (10th Cir.1987); *in accord, Scott v. Bowen*, 845 F.2d 856 (9th Cir.1988). The purpose behind the CMPL is to make the government whole for monies paid on fraudulent submissions and the cost of investigating such fraudulent submissions. The purpose of the 1987 amendments to the CMPL, about which more will be said later, was "to improve the ability of the Secretary and the Inspector General of the Department of Health and Human Services to protect Medicare, Medicaid, Maternal and Child Health Services Block Grant, and Title XX Social Services Block Grant Programs from fraud and abuse...." S.Rep. No. 100–109, 100th Cong., 1st Sess., 1–2 (1987), U.S.Code Cong. & Admin.News 1987, pp. 682, 683.

Under the CMPL, the Secretary may impose a civil penalty of "not more than $2,000 for each item or service" falsely claimed, and "an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim." 42 U.S.C. § 1320a–7a(a), as amended. The CMPL and regulations issued by the Secretary identify the factors to be considered by the Secretary in any imposition of penalties and assessments. As indicated, persons subject to civil monetary penalties and assessments may also be excluded from further participation in federal and state health care programs. 42 U.S.C. § 1320a–7a(a).

Prior to the 1987 amendments to the CMPL, Congress did not set forth a statute of limitations prescribing the time within which the Secretary could initiate an action for civil monetary penalties and assessments against a claimant who made false claims. However, 28 U.S.C. § 2462 provided that, except as otherwise provided by an Act of Congress, a proceeding for enforcement of any civil fine, penalty, or forfeiture be commenced within five years from the date the claim first accrued and the Secretary, by regulation, also imposed a five-year period within which he had to initiate such an action against a false claimant. 42 C.F.R. § 1003.132.[1]

---

**1.** As originally promulgated, 42 C.F.R. § 1003.132 provided that "[no] action under this part shall be entertained unless commenced ... within five years from the date on which the right of action accrued."

The 1987 amendments to the CMPL contained an express statute of limitations which provides as follows:

"The Secretary may not initiate an action under this section with respect to any claim, request for payment, or other occurrence described in this section later than six years after the date the claim was presented, the request for payment was made, or the occurrence took place." 42 U.S.C. § 1320a–7a(c)(1).

The background facts concerning Dr. Bernstein are not in dispute and were in fact stipulated to and adopted by the Administrative Law Judge. While practicing chiropractic medicine in Coral Springs, Florida, Dr. Bernstein participated in the Medicare program as a provider of medical services. From March through May, 1982, Dr. Bernstein submitted 210 claims for Medicare reimbursement to Blue Cross and Blue Shield of Florida, the designated Medicare carrier for Florida, claiming that he had performed 210 "manipulations of the spine" on ten different Medicare beneficiaries. At least 164 of these claims were false because Dr. Bernstein had not, in fact, performed the services of which he made claims. With respect to those 164 claims, Dr. Bernstein sought, and obtained, $2,460 as reimbursement from Blue Cross and Blue Shield.

On August 15, 1984, Dr. Bernstein was charged in a 20–count criminal indictment under 18 U.S.C. §§ 1001, 1341 and 1342 with the submission of false claims for Medicare reimbursement. He later entered into a plea agreement wherein on May 10, 1985, he pled guilty to one count in the indictment and was sentenced by the United States District Court for the District of Colorado to three years probation, fined $1,000 and ordered to serve 30 days in a jail-type institution on weekends.[2] Three months later, in September of 1985, Dr. Bernstein was suspended from participation in the Medicare and Medicaid programs for ten years pursuant to 42 U.S.C. § 1320a–7a(a). Dr. Bernstein initially appealed his ten-year suspension, but later withdrew his request for a hearing and the appeal was dismissed by an Administrative Law Judge. The parties now agree that, upon Dr. Bernstein's criminal conviction, suspension was mandated by the statute then in effect.

In the Spring of 1987, shortly before the five-year limitation period prescribed by regulation was about to expire, the Inspector General advised Dr. Bernstein that he was considering the imposition of a civil monetary penalty and assessment against him. Because the five-year period was about to expire, the Inspector sought, and secured, from Dr. Bernstein an agreement dated March 31, 1987, which tolled the running of the five-year statute of limitations. By its terms, however, the agreement expired on May 1, 1987. The agreement stated that the intent of the parties was "to allow settlement negotiations to proceed during a period in which a limitations defense with respect to certain claims would otherwise be established." In this regard, it would appear that certain claims against Dr. Bernstein were already beyond the five-year period. As to all claims that were not already beyond the five-year period, it was apparently agreed that the statute would expire on June 28, 1987. However, no action was brought by the Inspector on or before that date.

On August 18, 1987, Congress enacted the six-year statute of limitations on actions by the Secretary to recover civil penalties and assessments against false claimants of Medicare and Medicaid. 42 U.S.C. § 1320a–7a(c)(1). The effective date of the statute was September 1, 1987. On February 24, 1988, the Inspector notified Dr. Bernstein by letter of his intent to impose a civil monetary penalty and assessment against Dr. Bernstein based on the false claims submitted by Dr. Bernstein for reimbursement by Medicare in Florida from March through May, 1982. More specifically, the Inspector informed Dr. Bernstein of the determination that in 1982 he had

**2.** Dr. Bernstein moved to Colorado from Florida in 1983, where he now practices chiropractic medicine.

presented 210 false claims worth $3,150 for Medicare reimbursement, and that the maximum civil penalty under the CMPL was $420,000, and the maximum assessment was $6,300. However, after considering all of the circumstances, the Inspector proposed a civil penalty of $63,000 and an assessment of $3,488.[3] After receiving this notice, Dr. Bernstein requested a hearing before an Administrative Law Judge as provided in 42 C.F.R. § 1003.109(b).

Dr. Bernstein subsequently filed a motion to dismiss the action instituted by the Inspector. It was Dr. Bernstein's position that the five-year period prescribed in 28 U.S.C. § 2462 and 42 C.F.R. § 1003.132 expired no later than June 28, 1987, and that the newly enacted six-year statute did not apply to him. The Administrative Law Judge denied the motion to dismiss, holding that Congress intended that the new six-year statute would apply to any action brought pursuant to the CMPL which was initiated after September 1, 1987.

Thereafter, the parties agreed to stipulated facts and waived a hearing. Both parties agreed that the Administrative Law Judge could enter judgment against Dr. Bernstein in the form of a civil penalty in the sum of $49,200 and an assessment in the sum of $2,722.40, as authorized by 42 U.S.C. § 1320a–7a(a). However, both parties specifically recognized Dr. Bernstein's right to appeal the Administrative Law Judge's denial of the motion to dismiss.

On February 9, 1989, Dr. Bernstein filed exception to the decision and order of the Administrative Law Judge. On March 17, 1989, a three-member panel of Board members of the Departmental Appeals Board of the Department of Health and Human Services declined to review the initial decision of the Administrative Law Judge. On May 16, 1989, Dr. Bernstein filed the present petition for review in this Court.

The statute of limitations added to the CMPL by Congress in 1987 reads as follows:

The Secretary may not initiate an action under this section with respect to any claim, request for payment, or other occurrence described in this section later than six years after the date the claim was presented, the request for payment was made, or occurrence took place.

42 U.S.C. § 1320a–7a(c)(1).

 Stated affirmatively, the foregoing statutory amendment authorizes the Secretary to initiate an action with respect to any claim or request for payment at any time up to six years after the date the claim for reimbursement was presented or a request for payment was made. It is agreed that the present action was initiated several months after the effective date of the 1987 amendment. As to some of the claims made by Dr. Bernstein to Medicare, the action was within the six-year period prescribed by the 1987 amendment. The statute itself provides that the six-year statute of limitations will "become effective at the end of the fourteen-day period beginning on the date of the enactment of this Act [August 18, 1987] and shall not apply to administrative proceedings commenced before the end of such period." 42 U.S.C. § 1320a–7a note. The provision that the 1987 amendment shall not apply to proceedings commenced *before* the effective date of the 1987 amendment suggests, and strongly so, that the 1987 amendment was intended to apply to proceedings initiated *after* the effective date of the 1987 amendment which, of course, is what the statute says.

As indicated, the Secretary's proceeding against Dr. Bernstein was commenced several months after the effective date of the 1987 amendment. We reject the suggestion by counsel that the Secretary initiated a proceeding for civil monetary penalties and assessments in September 1985 when Dr. Bernstein was suspended from participation in Medicare and Medicaid for ten years. The parties in a "Final Stipulation of Facts Dated December 21, 1988," upon

**3.** As previously stated, under the CMPL a civil money penalty of not more than $2,000 for each item or service falsely claimed may be imposed and an assessment of not more than twice the amount claimed for each such item or service may be imposed in lieu of damages sustained by the United States. 42 U.S.C. § 1320a–7a(a).

which the Administrative Law Judge rendered his decision, agreed that Dr. Bernstein's suspension on September 30, 1985, was "required by 42 U.S.C. § 1320a–7(a)."

■ In sum, we think that in applying the six-year statute of limitations to Dr. Bernstein, the Secretary was following the "plain meaning" of the 1987 amendment. At the very least the Secretary's interpretation of 42 U.S.C. § 1320a–7a(c)(1) is "permissible" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). An administrative agency's interpretation of a statute which the agency is entrusted to administer is entitled to considerable deference by a reviewing court. *Chapman v. United States Dep't of Health & Human Services*, 821 F.2d 523, 527 (10th Cir.1987).

■ There remains the important question of whether the six-year statute of limitations provided for in the 1987 amendments can be applied to Dr. Bernstein without violating his constitutional rights. In this regard, Dr. Bernstein argues that his case is controlled by the five-year statute of limitations and that the six-year statute of limitations contained in the 1987 amendments to the CMPL cannot be applied to him since the five-year statute had already run. We hold that the so-called "retroactive" application of the six-year statute of limitations contained in the 1987 amendments does not violate any of Dr. Bernstein's constitutional rights. In support of our holding, see *Industrial Union of Electrical, Radio and Mach. Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 243, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1142–43, 89 L.Ed. 1628 (1945); and *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885).

In *Campbell, supra*, a personal debt was barred by a state statute of limitations which was "complete and perfect." Thereafter, the state legislature, in effect, repealed the statute of limitations, and the creditor then brought suit to collect the debt from the debtor. The debtor argued in the state courts that "the bar of the [earlier] statute, being complete and perfect, could not, as a defence [in the subsequent collection suit], be taken away … and that, to do so, would violate that part of the Fourteenth Amendment to the Constitution of the United States which declares that no State shall 'deprive any person of life, liberty, or property without due process of law.'" *Id.* at 622, 6 S.Ct. at 210. The Texas courts rejected the debtor's argument. In a writ of error to the state court, the United States Supreme Court affirmed. In thus holding, the United States Supreme Court distinguished the instant case, which was one for a "personal debt," from an action to recover possession of real or personal property. As concerning a "just debt," the United States Supreme Court in *Campbell* spoke as follows:

> We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. The statutes of limitation, as often asserted and especially by this court, are founded in public needs and public policy—are arbitrary enactments by the lawmaking power. *Tioga Railroad v. Blossburg and Corning Railroad*, 20 Wall. 137, 150 [22 L.Ed. 331]. And other statutes, shortening the period or making it longer, which is necessary to its operation, have always been held to be within the legislative power until the bar is complete. The right does not enter into or become a part of the contract. No man promises to pay money with any view to being released from that obligation by lapse of time. It violates no right of his, therefore, when the legislature says, time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost.

*Id.* at 628, 6 S.Ct. at 213.

The Supreme Court in *Campbell* also spoke as follows:

In all this class of cases the ground taken is, that there exists a contract, but, by reason of no remedy having been provided for its enforcement, or the remedy ordinarily applicable to that class having, for reasons of public policy been forbidden or withheld, the legislature, by providing a remedy where none exists, or removing the statutory obstruction to the use of the remedy, enables the party to enforce the contract, otherwise unobjectionable.

Such is the precise case before us. The implied obligation of defendant's intestate to pay his child for the use of her property remains. It was a valid contract, implied by the law before the statute began to run in 1866. *Its nature and character were not changed by the lapse of two years, though the statute made that a valid defence to a suit on it. But this defence, a purely arbitrary creation of the law, fell with the repeal of the law on which it depended* (emphasis added).

*Id.* at 627–28, 6 S.Ct. at 213.

In *Chase Securities, supra,* an action based on an illegal sale of stock, as well as common law fraud and deceit, was brought in a state court of Minnesota. The plaintiff sought return of the money paid for the stock. The defendant relied, in part, on the applicable statute of limitations. Subsequently, the state legislature changed the statute of limitations there involved, the effect of which was to abolish any defense that defendant might otherwise have made under the Minnesota statutes of limitation. In state court, the defendant argued that "the [subsequent] statute, if applied so to lift the bar, deprived appellant [the defendant] of property without due process of law in violation of the Fourteenth Amendment." *Id.* 325 U.S. at 308, 65 S.Ct. at 1139. The trial court rejected this argument and entered judgment for the plaintiff. On appeal, the Minnesota Supreme Court affirmed on the basis of *Campbell v. Holt, supra.* The case was then brought to the United States Supreme Court by appeal.

In affirming the Minnesota Supreme Court in *Chase Securities,* the United States Supreme Court described the holding in *Campbell* as follows:

In *Campbell v. Holt, supra,* this Court held that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, *even after right of action is barred thereby,* restore to the plaintiff his remedy, and divest the defendant of the statutory bar. This has long stood as a statement of the law of the Fourteenth Amendment, and we agree with the court below that its holding is applicable here and fatal to the contentions of appellant (emphasis added). (Footnote omitted.)

*Id.* at 311–12, 65 S.Ct. at 1441.

Further, the Supreme Court in *Chase Securities* rejected the suggestion that *Campbell v. Holt, supra,* be overruled and characterized the essential holding in *Campbell* as being "sound," and one that should not be overruled, and went on to speak as follows:

The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law. Some rules of law probably could not be changed retroactively without hardship and oppression, and this whether wise or unwise in their origin. Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment. Nor has the appellant pointed out special hardships or oppressive effects which result from lifting the bar in this class of cases with retrospective force. This is not a case where appellant's conduct would have been different if the present rule had been known and the change foreseen. It

does not say, and could hardly say, that it sold unregistered stock depending on a statute of limitation for shelter from liability. The nature of the defenses shows that no course of action was undertaken by appellant on the assumption that the old rule would be continued. When the action was commenced, it no doubt expected to be able to defend by invoking Minnesota public policy that lapse of time had closed the courts to the case, and its legitimate hopes have been disappointed. But the existence of the policy at the time the action was commenced did not, under the circumstances, give the appellant a constitutional right against change of policy before final adjudication. Whatever grievance appellant may have at the change of policy to its disadvantage, it had acquired no immunity from this suit that has become a federal constitutional right....

*Id.* at 315–16, 65 S.Ct. at 1143.

In *Electrical Workers v. Robbins & Myers, Inc., supra,* a discharged employee brought suit in federal court against her erstwhile employer claiming wrongful discharge. The suit was dismissed because the plaintiff had not filed her charge with the Equal Employment Opportunity Commission within 90 days "after the unlawful practice occurred," as required by statute. The "90–day" requirement was later extended by statute to 180 days. Both the district court and the court of appeals held that the extension to 180 days did not apply to plaintiff's suit and could not "revive" a claim that was "barred and extinguished" before the effective date of the statute extending the time to 180 days within which a claim must be filed with the Equal Employment Opportunity Commission.

On certiorari, the United States Supreme Court in *Electrical Workers* reversed and held that the 180–day rule, not the 90–day rule, applied to the plaintiff. In connection therewith, the Supreme Court held that the lifting of a bar of the statute of limitations so as to restore a remedy previously lost through the mere lapse of time is not *per se* unconstitutional and in connection therewith commented on *Chase Securities v. Donaldson* as follows:

Respondent contends, finally, that Congress was without constitutional power to revive, by enactment, an action which, when filed, is already barred by the running of a limitations period. This contention rests on an unwarrantedly broad reading of our opinion in *William Danzer Co. v. Gulf & Ship Island R. Co.,* 268 U.S. 633 [45 S.Ct. 612, 69 L.Ed. 1126] (1925). *Danzer* was given a narrow reading in the later case of *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 312 n. 8 [65 S.Ct. 1137, 1141 n. 8, 89 L.Ed. 1628] (1945). The latter case states the applicable constitutional test in this language:

"The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law.... Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment." *Id.,* at 315–16 [65 S.Ct. at 1143]."

Applying that test to this litigation, we think that Congress might constitutionally provide for retroactive application of the extended limitations period which it enacted.

*Id.* 429 U.S. at 243–44, 97 S.Ct. at 450–51.

Dr. Bernstein recognizes that *Campbell v. Holt, supra,* and *Chase Securities v. Donaldson, supra,* in particular, are not supportive of his position that the statute of limitations in the 1987 Amendments cannot be applied to him without violating constitutional rights, but states that those cases are "inconsistent with subsequent holdings," citing *Griffon v. United States Dep't of Health & Human Services,* 802 F.2d 146 (5th Cir.1986) and *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in that order. *Griffon* does not involve a statute of limitation. The holding in *Griffon* was that the CMPL,

which was enacted by Congress on August 13, 1981, could not be applied retroactively to acts of medical fraud occurring before the effective date of the CMPL. *Halper* does not involve a statute of limitations either and, in our view, *Halper* does not weaken *Campbell v. Holt, supra,* or *Chase Securities v. Donaldson, supra,* in any respect. More will be said about *Halper* later.

[6] As an alternative position, Dr. Bernstein argues that the Secretary's claim is barred by the tolling agreement entered into by himself and the Inspector General in 1987. That is not our reading of that document. The document was described at the top in capital letters as being an "Agreement to Toll Statute of Limitations During Period of Settlement Negotiations." Paragraph 1 thereof identifies the parties to the agreement. Paragraph 2 stated that the Inspector General was at the time considering initiation of action seeking the imposition of civil monetary penalties and assessments against Dr. Bernstein with respect to claims he had made in 1982 to Medicare. Paragraph 3 stated that the agreement was entered into in order to allow the parties to negotiate during a period in which a limitations defense with respect to certain claims would otherwise be established. Paragraph 4 stated that in consideration of the Inspector General's "temporarily forebearing" from taking any action to recover such penalties or assessments, Dr. Bernstein waives his statute of limitations defense as to any claims not yet barred by statute. Paragraph 5 provides that Dr. Bernstein's waiver did not apply to claims already barred by a limitations defense. And paragraph 6 stated the agreement would expire May 1, 1987. Such was the extent of the agreement.

The negotiation proved fruitless, and the agreement expired by its own terms on May 1, 1987. By the provision in paragraph 4, the "temporary forebearance" agreed to by the Inspector General expired, and he was free to bring a CMPL claim against Dr. Bernstein who, in turn, was free to assert any statute of limitations defense he might have. Without further

belaboring the point, the tolling agreement between the parties does not bar the present action.

■ Dr. Bernstein's final argument is that since he was convicted in criminal proceedings for the false claims submitted to Medicare, to thereafter impose civil penalties and an assessment against him on those same claims constitutes a violation of the Double Jeopardy clause. The CMPL itself states that the penalties and assessments authorized by the CMPL are "in addition to any other penalties that may be prescribed by law." 42 U.S.C. § 1320a–7a(a).

*United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) recognized that the government in an action under the civil False Claims Act against a former medical service manager for filing allegedly inflated Medicare claims may demand civil compensation "according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis...." *Id.* 109 S.Ct. at 1900. However, the Supreme Court in *Halper* also recognized that a civil sanction which serves a goal of punishment, rather than merely making the government whole, could violate the Double Jeopardy clause.

In the instant case, the maximum penalty allowed by statute was $200 for each of the 150 false claims for a total of $300,000. As for assessments, the maximum amount was double the amount of the fraudulent claims, or $4,500. The parties stipulated to penalties totaling $49,200 and assessments totaling $2,722.40, both well below the maximum in each instance. *Halper* was decided after the parties stipulated to the penalties and assessments. However, the fact of the stipulation bars Dr. Bernstein from now claiming that the penalties and assessments imposed on him were punitive, rather than remedial in nature. In other words, Dr. Bernstein stipulated to a penalty and assessment which was far below the

penalty and assessment which could have been imposed under the statute.

Decision affirmed.