896 F.Supp. 23 (1995)
Alexandra E. ORFANOS, Petitioner,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.
Civ. A. No. 94-0377 (PLF).
United States District Court, District of Columbia.
August 18, 1995.
*24 Thomas R. Dyson, Washington, DC, for petitioner.
Suzanne C. Nyland, Assistant U.S. Attorney, Washington, DC, for respondent.

OPINION
PAUL L. FRIEDMAN, District Judge.
The Program Fraud Civil Remedies Act ("PFCRA") was enacted in 1986 to allow federal departments and agencies, including the United States Department of Health and Human Services ("HHS") to pursue administrative *25 actions against individuals for false, fictitious or fraudulent claims for benefits or payments under a federal agency program. 31 U.S.C. § 3802. The statute provides for an assessment in lieu of damages of twice the amount of money obtained by virtue of the false claims and a penalty of up to $5,000 for each false claim. 31 U.S.C. § 3802(a)(1); see 45 C.F.R. § 79.31.
Alexandra E. Orfanos, petitioner, admitted that she converted her deceased mother's Social Security Administration widow's benefit checks ("SSA checks") to her own use every month from 1971 to 1989. Although Ms. Orfanos admitted forging her mother's signature on 224 separate checks, she was found liable under the PFCRA for 34 counts of fraud, reflecting only the 34 checks she endorsed after October 21, 1986, the effective date of the PFCRA, in the total amount of $13,400. The HHS Administrative Law Judge found that an overriding number of aggravating factors, including the total duration of Ms. Orfanos' violations, warranted the imposition of the maximum penalty of $170,000  $5,000 for each of the 34 checks  in addition to an assessment in the amount of $26,800. The judgment in the total amount of $196,800 was affirmed by the Departmental Appeals Administrative Board.
Ms. Orfanos concedes that she owes $26,800 in double damages pursuant to the PFCRA and HHS regulations. She petitions the Court for a review of the penalty assessed, arguing that the decisions, findings and determinations of the HHS regarding the penalty are unsupported by substantial evidence and are arbitrary, capricious and excessively harsh under the facts and circumstances of her case. Respondent HHS moves for summary judgment, seeking a final judgment and an order directing the petitioner to pay $196,800 in assessments and penalties.
The Court, having considered the petition, respondent's motion for summary judgment, petitioner's opposition, and the entire record herein, finds that the decisions of the ALJ and the Departmental Appeals Board are supported by substantial evidence and are not arbitrary, capricious or contrary to law. Furthermore, there are no extraordinary circumstances warranting the consideration at this stage of any new objections and no reasonable grounds for the consideration of new evidence not presented to HHS. 31 U.S.C. § 3805(d). On the record before the Court, the Court concludes that respondent HHS is entitled to judgment as a matter of law.

I. FACTUAL BACKGROUND
Ms. Orfanos' mother, Mary Economou, began receiving SSA widow's benefit checks in 1962 after her husband's death. Department of Health and Human Services Departmental Appeals Board Decision ("Decision") ¶ 4. Ms. Economou moved into the Orfanos home in 1967 and Ms. Orfanos assumed responsibility for handling her mother's SSA checks because Ms. Economou was illiterate. Decision ¶¶ 5, 6. Ms. Economou endorsed the checks and Ms. Orfanos countersigned and cashed or deposited them for her mother. Decision ¶ 6. Ms. Economou died on December 10, 1967. Decision ¶ 7.
Ms. Orfanos failed to notify the Social Security Administration of her mother's death, and Ms. Economou's benefit checks continued to be sent to the Orfanos home. Decision ¶¶ 9, 10. From January 1, 1971, to October 31, 1986, Ms. Orfanos received, endorsed and cashed or deposited 190 SSA checks made payable to Mary Economou totalling $47,367.20. Decision ¶ 16. From November 1, 1986 to August 31, 1989, Ms. Orfanos received, endorsed and cashed or deposited 34 SSA checks totalling $13,400.00. Decision ¶ 17.
Ms. Orfanos was employed at Riggs Bank in its finance department's analysis division from 1968 to 1990; her responsibilities included the preparation of monthly financial analyses. Post-hearing Brief of the U.S. Department of Health and Human Services ("Post-hearing Br.") at 4. In order to enhance her career, she took more than fifteen courses with the American Institute of Banks in subjects such as economics, accounting, law and banking, money and banking and auditing. Post-hearing Br. at 4. She continued her employment at Riggs Bank until 1990 when she retired at the age of 76. Post-hearing Br. at 5.
*26 The SSA initiated the Centenarian program in 1989. The program dispatched field representatives to conduct in-person visits to verify the status of very elderly recipients of SSA checks. Decision ¶ 20. A field representative attempted to visit Ms. Economou on August 23, 1989, after a notification letter had been sent to the Orfanos address. Finding no one home, the representative left her business card and requested that someone call her regarding Ms. Economou. Decision ¶ 22. Later that day, Ms. Orfanos telephoned the Wheaton, Maryland office and informed another field representative that her mother was away. Decision ¶ 23. Ms. Orfanos continued to represent to the SSA that her mother was away or out of the country until September 8, 1989, when the SSA received a letter from Ms. Orfanos stating that Ms. Economou had died in 1970. Decision ¶ 26.
HHS issued a complaint against Ms. Orfanos, alleging that she had fraudulently endorsed her deceased mother's SSA checks and converted them to her own use from 1971 to 1989. Because the PFCRA was not enacted until 1986, with an effective date of October 21, 1986, however, HHS only sought to pursue its administrative claim against Ms. Orfanos for the 34 checks disbursed between November 1, 1986 and August 1989. Ms. Orfanos admitted that she had endorsed and converted her mother's checks, but she testified at the administrative hearing that she believed her mother wanted her to have the money for her support. Opposition to Respondent's Motion for Summary Judgment ("Opp'n") at 5. Ms. Orfanos' son, George, testified at the administrative hearing that his mother was not wealthy and that he contributed to her support. Opp'n at 5.
Ms. Orfanos does not contest the adjudication of liability or the assessment of $26,800 in double damages, but she does contend that the civil penalty of $170,000 is unreasonable, unfair and inequitable in light of her circumstances. Opp'n at 6. First, she asserts that the ALJ improperly considered the conversion of checks from 1971 to 1986 in determining the degree of her culpability and the amount of the penalty, thereby effectively applying the PFCRA retroactively. Petitioner's Memorandum in Support of Petition for Review ("Petitioner's Mem.") at 9-10. Next, she contends that the ALJ did not properly weigh her cooperation and confusion in determining the amount of penalty. Finally, she contends that the HHS placed too great a value on her real estate holdings in calculating her ability to pay the penalties. Opp'n at 11.

II. DISCUSSION
A determination of liability made by an ALJ under the PFCRA is reviewable upon petition by a United States district court. 31 U.S.C. § 3805(a), (b). On review of an HHS decision, the decisions, findings and determinations of the administrative authority with respect to questions of fact shall be final and conclusive, and shall not be set aside unless they are found by the court to be unsupported by substantial evidence. 31 U.S.C. § 3805(c). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). In concluding whether the decisions, findings and determinations of an authority are unsupported by substantial evidence, the court shall review the whole record or those parts of it cited by a party and must take due account of the rule of prejudicial error. 31 U.S.C. § 3805(c).
While procedurally this case is before the Court on a motion for summary judgment, the requisites for a motion for summary judgment set forth in Rule 56, Fed.R.Civ.P., and the relevant case law are not really apposite. When a federal district court is asked to review an administrative adjudication, it does not sit as a trier of fact, as it does in the typical civil case. It therefore is not called upon to isolate genuine issues of material fact that are to be tried before the court or a jury; the agency decision is reviewed, not tried, and it must be affirmed if supported by substantial evidence. See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir.1994); *27 State of Kansas v. Shalala, 884 F.Supp. 413, 415 (D.Kan.1995); Lodge Tower Condominium v. Lodge Properties, Inc., 880 F.Supp. 1370, 1374-75 (D.Colo.1995). Except in unusual circumstances, the Court may not consider extra-record materials such as affidavits and depositions as it does in connection with summary judgment motions under Rule 56(e), Fed.R.Civ.P.; rather, it is bound by the administrative record. See, e.g., 31 U.S.C. § 3805(d). Finally, in reviewing an agency determination such as the one at issue here, the Court does not defer to the evidence of the non-movant or draw justifiable inferences in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). It must accept the decisions, findings and determinations of the administrative authority as final and conclusive unless they are unsupported by substantial evidence, or are arbitrary and capricious or otherwise contrary to law. See, e.g., 31 U.S.C. § 3805(c).

A. Retroactivity
Petitioner contends that the Administrative Law Judge improperly considered the 16 years of uncharged misconduct and thus indirectly applied the PFCRA retroactively when he imposed the maximum penalty. She relies on Griffon v. United States Dept. of Health and Human Services, 802 F.2d 146, 155 (5th Cir.1986). In Griffon, the petitioner was found to be civilly liable under the Civil Monetary Penalties Law ("CMPL"), a statute that was not enacted until three years after the petitioner's criminal conviction of 22 counts of fraud. The Fifth Circuit found that Congress had not explicitly and affirmatively expressed its intent that the CMPL apply retroactively, and it therefore held that the civil penalties directly assessed under the statute for the earlier fraud were invalid.
In this case, by contrast, HHS did not apply the PFCRA retroactively; rather, it applied the maximum statutory penalties for petitioner's misconduct from November 1, 1986 to 1989, a period during which the PFCRA was the law.[1] In determining the appropriate penalty under the PFCRA, however, the ALJ was permitted to weigh such factors as the number of false, fictitious or fraudulent claims or statements, the time period over which such claims or statements were made, the degree of the defendant's culpability, the amount of money falsely claimed, the relationship of the amount imposed as civil penalties to the amount of the government's overall loss, whether the defendant attempted to conceal the misconduct, and the need to deter others from engaging in similar misconduct. 45 C.F.R. § 79.31(b). He was also permitted to consider aggravating and mitigating circumstances other than the statutorily defined factors. 45 CFR § 79.31(c). To the extent the ALJ considered petitioner's conduct between 1970 and October 31, 1986, such consideration is not barred by statute or regulation and is a legitimate and relevant aspect of determining culpability.

B. Mitigating and Aggravating Factors
The ALJ found, and the Court agrees, that there are substantial aggravating circumstances that justify the penalty imposed. Forging another's endorsement on 34 checks over three years is itself a sufficiently substantial transgression to warrant the imposition of the maximum penalty of $5,000 per false claim. Furthermore, petitioner failed to notify the SSA of her mother's death both in 1970 and upon initial inquiry by the field representative handling the Centenarian contact in 1989, or at any time in between. In fact, Ms. Orfanos admitted that her mother was dead and that she had cashed the checks for her personal use only after first insisting on a number of occasions that her mother was away or out of the country. The administrative record also demonstrates that the ALJ carefully and properly considered other numerous aggravating factors, including the substantial length of time over which the fraud occurred, the fact that petitioner was the sole perpetrator of the check conversions and was under no coercion or compulsion, the cost and overall loss to the government of petitioner's *28 fraud, and the importance of deterring similar schemes by others in the future, all of which are relevant factors under the regulations. See 45 C.F.R. § 79.31(c).
Despite the fact that petitioner may now claim to be confused and unsure about the suspect events, the administrative record shows that she was sufficiently competent to maintain steady employment at a bank and consistently earn favorable performance reviews until she was 76 years-old, a year after the violations had ceased. As a long-time bank employee with some training in banking, finance and accounting, she was relatively sophisticated about finances, checks and banking procedures, enabling her more easily to perpetuate the fraud over many years. While petitioner's admissions of liability, cooperation with the investigation and her own asserted naivete regarding the SSA checks are mitigating factors, they were evaluated by the ALJ. The agency decision shows, however, that the ALJ, in his discretion, concluded that the aggravating circumstances outweighed the mitigating factors. Petitioner presents no convincing evidence to show either that the ALJ ignored the mitigating circumstances or that the ALJ's determination of the degree of petitioner's culpability was unsupported by substantial evidence.

C. Alleged Inaccurate Evaluation of Petitioner's Financial Worth
Petitioner contends that HHS overestimated her net worth and the value of her assets in considering the amount of the penalty she can afford to pay. Despite petitioner's pleas, she presents no evidence aside from conclusory statements, such as her own property value estimate, to contradict or undermine the accuracy of the government's appraisal. In addition, the financial statement that petitioner herself submitted to HHS shows that her acknowledged assets of approximately $390,000 far exceed her liabilities of $41,000. While petitioner alleges that her monthly income is meager and must be supplemented by her son, the Court's sympathy cannot replace the lack of evidence to show that the maximum penalty is disproportionate when compared to the petitioner's total, rather than liquid, assets. The decisions of HHS on this score are supported by substantial evidence and are not arbitrary and capricious.
In any event, the statute and regulations do not mandate that petitioner's financial status be taken into account. While the ALJ could consider economic hardship as a mitigating factor, there is no requirement that the ALJ must limit the amount of the penalty imposed, so long as it is justified by substantial evidence and conforms to the statutory guidelines. Petitioner has failed to demonstrate that her financial situation is so grave as to mitigate significantly the aggravating circumstances found by the ALJ and to warrant the reduction of the penalty. The record demonstrates that the penalty imposed by the ALJ is permitted by the statute and regulations and is neither unwarranted in law nor unjustified in fact. NL Industries, Inc. v. Dep't of Transportation, 901 F.2d 141, 144 (D.C.Cir.1990).

III. CONCLUSION
Petitioner presents no evidence to demonstrate that the Administrative Law Judge's assessment of penalties is unsupported by substantial evidence. The ALJ had substantial evidence to find, in his discretion, that the aggravating circumstances significantly outweighed the mitigating circumstances. The respondent's motion for summary judgment is granted. The Court concludes that the United States Department of Health and Human Services is entitled to judgment as a matter of law in the total amount of $196,800.
SO ORDERED.
NOTES
[1] A retroactive application of the PFCRA to the 19 years of converted checks would have led to assessments of approximately $122,000 and a maximum penalty of $1,120,000, an amount much greater than the amount of the current judgment.