**Marion EDWARDS, Plaintiff-Appellant,**

v.

**STATE FARM INSURANCE COMPANY and "John Doe," Defendants-Appellees.**

Nos. 86–3686, 86–3840.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1987.

Lewis O. Unglesby, Unglesby & Brown, Baton Rouge, La., for plaintiff-appellant.

William E. Willard, Powers & Vaughn, David M. Vaughn, Patricia A. McKay, for State Farm Ins. Co.

Richard S. Thomas, Baton Rouge, La., for John Doe.

Before RANDALL, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from the district court's dismissal of plaintiff-appellant Marion Edwards' Federal Communications Act and state law invasion of privacy claims for damages against defendants-appellees John Doe and Doe's liability insurer, State Farm Insurance Company (collectively Doe). The district court granted Doe's motion for summary judgment, dismissing Edwards' suit with prejudice. We affirm.

### Facts and Proceedings Below

On an unspecified day in August 1985, Marion Edwards spoke from a mobile telephone [1] in his automobile to his attorney, John R. Martzell, who was using a regular, line telephone in his law office in New Orleans. John Doe overheard the conversation on his Bearcat 350 Radio Receiver Scanner, which he had with him in his Baton Rouge business office. The Bearcat radio has an automatic scanning feature that monitors a number of radio frequencies or channels, including ones transmitting police and air traffic control broadcasts, in addition to frequencies assigned for cellular phone system communications, such as Edwards' mobile telephone. Along with similar models made by competitors, the Bearcat radio is commercially available to the general public at most radio and electronics stores.

While Doe was using his radio's scanner, the radio picked up the conversation between Edwards and Martzell. After listening for a few moments, Doe came to believe that Edwards and his attorney were discussing criminal activity. He then recorded the remainder of the conversation on his portable tape recorder and eventually delivered the tape to Stanford Bardwell, Jr., the United States Attorney for the Middle District of Louisiana. Bardwell notified John Volz, the United States Attorney for the Eastern District of Louisiana, of the existence of the tape. Volz, who was prosecuting Edwards and others in a criminal trial then pending in federal district court in the Eastern District of Louisiana, promptly disclosed the existence of the tape to the court and to Martzell. Martzell then notified Edwards. Neither the tape nor the conversation was used in the pending criminal trial.

On the basis of these events, Edwards filed suit in federal district court pursuant to 18 U.S.C. § 2520, which authorizes a civil action by any person whose wire or oral communication was "intercepted, disclosed, or used" in violation of chapter 119 of Title 18 of the United States Code. *See* 18 U.S.C. §§ 2510–2520 (the Wiretap Act).[2] He named Doe and Bardwell as defendants. Subsequently, on February 6, 1986, Edwards initiated a separate action in state court against Doe and Doe's insurer, State Farm Insurance Company, alleging that Doe's actions constituted an invasion of privacy in violation of article 1, section 5 of the Louisiana Constitution and La. Civil Code art. 2315. Edwards amended the state court petition to add a claim that Doe's interception and divulgence of the conversation also violated section 605 of the Federal Communications Act. *See*

1. Mobile telephone services available for use in cars and other moving vehicles use both radio and wire (line) transmission. The technology, approved in 1981 by the Federal Communications Commission, utilizes a cellular radiotelephone system (cellular phone). Cellular phone systems operate by dividing large service areas into honeycomb-shaped segments (cells), each of which can receive and transmit messages within its parameters. When a caller dials a number on a cellular phone, a transceiver sends signals over the air on a radio frequency to a cell site. From there the signal travels over phone lines to a computerized mobile telephone switching office. The switching office automatically switches the conversation from one base station and frequency to another as the mobile telephone moves from cell to cell. *See* Electron-

ic Communications Privacy Act of 1986. S.Rep. No. 99–541, 99th Cong., 2d Sess., (1986), *reprinted in* 1986 U.S.Code Cong. & Ad.News 3555, 3563.

2. On October 21, 1986, chapter 119 of Title 18 was substantially revised by the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848 (codified as amended at 18 U.S.C.A. §§ 2510–2521 (West Supp.1987)). As amended, the Wiretap Act continues to authorize a civil action for violation of its provisions, but it now applies to "electronic communications" as well as wire and oral communications. *See* 18 U.S.C.A. §§ 2511, 2520 (West Supp.1987).

Communications Act of 1934, Pub.L. No. 73–416, § 605, 48 Stat. 1064, 1103–04 (1934) (currently codified as amended at 47 U.S.C. § 605(a)). Doe removed the suit to federal court, alleging federal question jurisdiction under 28 U.S.C. § 1331, and it was consolidated by order of the court dated April 3, 1986, with the already pending Wiretap Act suit.

On April 7, 1986, however, Edwards filed a motion to remand the second action to state court. The district court therefore severed the actions and did not consider the issues in the removed action concurrently with the Wiretap Act claim. The district court, on April 10, 1986, entered a summary judgment dismissing with prejudice Edwards' claim under the Wiretap Act. *Edwards v. Bardwell*, 632 F.Supp. 584 (M.D. La.1986). On appeal, a panel of this Court affirmed. 808 F.2d 54 (5th Cir.1986) (per curiam, unpublished opinion).

The district court subsequently denied Edwards' motion to remand the present Communications Act and state law tort action and, on August 29, 1986, granted in part Doe's motion for summary judgment, dismissing Edwards' claim under section 605 of the Communications Act. The district court also eventually granted summary judgment in favor of Doe on Edwards' Louisiana law tort claim, thereby dismissing the entirety of Edwards' action with prejudice. Edwards has timely brought the present appeal.

## Discussion

### I. Communications Act Claim

#### A. Background

Subsection (a) of section 605 of the Communications Act sets forth the activities proscribed by the statute:

"**605. Unauthorized publication or use of communications**

"(a) **Practices prohibited**

"Except as authorized by chapter 119, Title 18, (1) no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception.... (2) No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. (3) No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. (4) No person having received any intercepted radio communication or having become acquainted with ... such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator...."

Except for one amendment not relevant for purposes of this appeal,[3] this version of

---

**3.** The last sentence of section 605(a) was amended in 1982 to remove amateur and "CB" radio transmissions entirely from the protections of section 605. *See* Communications Amendments Act of 1982, Pub.L. No. 97–259, 126, 96 Stat. 1087, 1099 (1982); *see also* Brown & Helland, *Section 605 of the Communications Act: Teaching a Salty Old Sea Dog New Tricks,* 34 Cath.U.L.

Rev. 635, 646–48 (1985). The Communications Act was further amended in 1984 to regulate the interception of satellite cable programming, but these amendments left the language of subsection (a) of section 605 untouched. *See* Cable Communications Policy Act of 1984, Pub.L. No. 98–549, 98 Stat. 2779 (1984) (codified at 47 U.S.C.A. §§ 521–611 (West Supp.1987)). The

section 605(a) was enacted by Congress in 1968 as part of Title III of the Omnibus Crime Control and Safe Streets Act, § 803, Pub.L. No. 90–351, 82 Stat. 197, 223–25 (1986) (Crime Control Act). Title III of the Crime Control Act also amended Title 18 of the United States Code to add new chapter 119, entitled "Wire Interception and Oral Communications" (Wiretap Act). *Id.* § 802, 82 Stat. at 212–23 (codified as amended at 18 U.S.C.A. §§ 2510–2521 (West Supp. 1987)).

Prior to enactment of the Wiretap Act in 1968, the interception of radio *and* wire communications was governed by section 605 of the Communications Act.[4] The passage of the Wiretap Act, however, transferred "regulation of the interception of wire or oral communications" from the Communications Act to the new Wiretap Act. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 2112, 2196. As enacted, the Wiretap Act set forth a comprehensive scheme outlining the conditions under which "wire" or "oral" communications could be intercepted, disclosed, or used without running afoul of the statute's criminal or civil penalties. *See* 18 U.S.C. § 2511.

In enacting the Wiretap Act and concurrently amending the Communications Act, Congress did not state whether voice communications transmitted by *radio* waves were to be governed in the future by the Communications Act, the Wiretap Act, or both. Edwards' conversation, which was transmitted in part by radio waves, has already been determined to be an oral communication governed but unprotected by the Wiretap Act. *Edwards v. Bardwell,* 632 F.Supp. 584, 589 (M.D.La.1986), *aff'd,* 808 F.2d 54 (5th Cir.1986). Thus, his present suit presents the issue of whether a communication which the Wiretap Act covers but does not protect may nevertheless be protected by the Communications Act. No panel of this Circuit has yet had to decide this question; however, the First Circuit has reached it. *See United States v. Rose,* 669 F.2d 23 (1st Cir.), *cert. denied sub nom. United States v. Hill,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); *cf. United States v. Hall,* 488 F.2d 193 (9th Cir.1973).[5]

In *Rose,* the First Circuit concluded that while the Communications Act still applied to oral communications transmitted by radio waves, after the enactment of the Wiretap Act such communications were protected by section 605 only if the speaker possessed a subjective expectation of privacy that was also objectively reasonable. 669 F.2d at 26–27. Although unlike the Wiretap Act, *see* 18 U.S.C. § 2510(2), section 605 does not explicitly require any expectation

---

1984 amendments also for the first time expressly imposed civil and criminal penalties for violations of the provisions of section 605. *Id.* (codified at 47 U.S.C.A. § 605(d)).

**4.** Regulation of wire and radio communications was first consolidated into the jurisdiction of the new Federal Communications Commission with the enactment of the Communications Act of 1934. *See* Pub.L. No. 73–416, 48 Stat. 1064 (1934) (codified at 47 U.S.C. §§ 151–609). From that date until enactment of the Wiretap Act in 1968, section 605 of the Communications Act governed interception of both radio and wire communications by communications personnel, law enforcement officers, and private persons. *See generally* Brown & Helland, *supra,* note 3 at 644–46. Before 1934, the provision that later became section 605 was part of a statute regulating only radio communications. *See* Radio Act of 1912, Pub.L. No. 62–264, § 4, 37 Stat. 302, 307 (1912), *amended by* Radio Act of 1927, Pub.L. No. 69–632, §§ 1–41, 44 Stat. 1162 (1927); *see also* Brown & Helland, *supra,* note 3 at 640–44.

**5.** *Hall* involved police interception and use in a criminal prosecution of conversations among various defendants from a mobile telephone in a car to a regular, line telephone and from one mobile car telephone to another mobile car telephone. The Ninth Circuit held that for purposes of the Wiretap Act, because communications between a mobile car telephone and a regular, line telephone were transmitted in part by wire, they were wire communications, and that conversations between two car telephones, transmitted entirely by radio waves, were oral communications. *Hall,* 488 F.2d at 196–97. The court further held that since law enforcement officers had intercepted the conversations, and since the legislative history to the 1968 amendments to section 605 excluded policemen from the purview of that section, section 605 did not preclude the interceptions. *Id.* at 195–96. *Hall* thus suggested that communications could simultaneously be "wire or oral" for Wiretap Act purposes, and "radio" for Communications Act purposes.

of privacy, the First Circuit determined that by prefacing section 605's prohibitions with the words "[e]xcept as authorized by [the Wiretap Act]," Congress in 1968 incorporated this Wiretap Act requirement into the Communications Act. *Id.* at 26. Thus, according to the *Rose* Court, in simultaneously amending section 605 and passing the Wiretap Act, Congress "significantly diminished in scope [the protective shield of section 605] by incorporating the requirements of subjective and reasonable expectations of privacy" set forth in the Wiretap Act. *Id.* at 27.

B. *Application to Facts*

The thrust of Edwards' argument to the district court was that Doe violated the provision in section 605(a) that prohibits any "person not being authorized by the sender" from "intercept[ing] any radio communication and divulg[ing]" its existence or contents "to any person." The district court disagreed. Adopting the view expressed in *Rose,* the district court determined that section 605 prohibits the interception and divulgence of an "oral" radio communication only if it meets the expectation of privacy requirements imposed by the Wiretap Act for oral communications. The district court pointed out that in Edwards' earlier, Wiretap Act suit, it had decided that the conversation between Edwards and Martzell was an oral communication, and not a wire communication; that Edwards had no reasonable expectation of privacy regarding the conversation; and that Doe's interception therefore did not violate the Wiretap Act. *Edwards v. Bardwell,* 632 F.Supp. 584, 589 (M.D.La.1986), *aff'd,* 808 F.2d 54 (5th Cir. 1986).[6] The district court concluded that it was bound by its previous holding in *Bardwell* that the Edwards conversation was an oral communication to which no reasonable expectation of privacy attached under the Wiretap Act, and that since the Wiretap

Act's expectation of privacy requirement had been incorporated into section 605, the conversation was not protected by section 605 either.

On appeal, Edwards challenges the district court's conclusion. Edwards argues that the First Circuit's analysis in *Rose,* and the district court's here, is backwards. In Edwards' opinion, we should begin our analysis by determining whether the challenged activity was proscribed by section 605, without considering whether the activity is permitted under the Wiretap Act. Since "interception and divulgement" of radio communications is an activity prohibited under the second sentence of section 605, Edwards argues, it is reasonable for a speaker to expect that his privacy will be maintained, even if he knows his conversation can easily be overheard.

Although it has surface appeal, this argument begs the question whether Doe's interception and disclosure was in fact unlawful under section 605. We think it was not. Another panel of this Court has already held that for purposes of the Wiretap Act, Edwards' conversation with Martzell was an oral communication, and that it was unaccompanied by any justifiable expectation of privacy. *Bardwell.* The facts in *Bardwell* were precisely the same as those here; the two cases involve the very same conversation, just different statutes. The *Bardwell* opinion, therefore, has, at very least, *stare decisis* effect upon our resolution of this case. Consequently, the sole question for us is whether to follow *Rose,* which so far as we are aware is the only federal appellate opinion directly addressing the issue, in reading the "except as authorized by [the Wiretap Act]" clause in section 605 to incorporate the Wiretap Act's limiting definition of oral communications.

---

6. In so deciding, the district court and the panel of this Court that affirmed the district court on appeal rejected the *Hall* court's holding that a communication transmitted in part by radio waves and in part by wire was a wire communication for Wiretap Act purposes. *Accord Williamette Subscription Television v. Cawood,* 580

F.Supp. 1164 (D.Or.1984); *State v. Delaurier,* 488 A.2d 688, 693 (R.I.1985); *State v. Howard,* 235 Kan. 236, 679 P.2d 197 (1984); *see also Dorsey v. State,* 402 So.2d 1178 (Fla.1981) (similarly interpreting Florida statute with language identical to that in the Wiretap Act).

We elect to do so. While the phrase could be interpreted to preface only the first sentence of section 605, which regulates the conduct of communications personnel,[7] we think the better interpretation limits *each* of section 605's prohibitions to activities not authorized by the Wiretap Act. Under the former interpretation, activity permissible under the Wiretap Act could be prohibited under section 605 of the Communications Act. Since Congress added the introductory phrase to section 605 at the same time that it enacted the Wiretap Act, we believe Congress likely intended to make the statutes consistent. The latter interpretation has this effect by ensuring that the interception and divulgence of a voice communication transmitted by radio waves is not prohibited by section 605 unless the communication also falls within the protections of the Wiretap Act. Therefore, although we acknowledge that neither the language of section 605 nor the relevant legislative history makes it entirely clear whether Congress intended this result,[8] we conclude that section 605 makes unlawful the interception and divulgement of an "oral" radio communication only if the speaker held a subjective expectation of privacy that was justifiable under the circumstances.[9] Since Edwards has been determined not to have possessed such an expectation with respect to the conversation at issue, we hold that Doe did not violate section 605 by listening to, and disclosing to the federal authorities the contents of, that conversation.

## II. State-law Right to Privacy Claim

Edwards also challenges the district court's dismissal, on summary judgment, of his Louisiana law tort claim for invasion of privacy. The right to privacy is expressly recognized in the Louisiana Constitution, which provides that "[e]very person shall be secure in his person ... [and] communications ... against unreasonable ... invasions of privacy." La. Const. art. 1, § 5. One of the ways a plaintiff may recover under Louisiana law for invasion of this right to privacy is by proving that the defendant unreasonably disclosed embarrassing private facts about him. *Jaubert*

---

7. One commentator has argued in favor of such an interpretation. *See* Fein, *Regulating the Interception and Disclosure of Wire, Radio, and Oral Communications: A Case Study of Federal Statutory Antiquation*, 22 Harv.J. on Legis. 47, 60 & 88–90 (1985). Even this commentator, however, suggested as an alternative interpretation the one adopted by the First Circuit in *Rose. Id.* at 62–63. Other authors have at least implicitly read the clause to modify each of the activities proscribed by section 605. *See, e.g.*, Note, *The Admissibility of Evidence Obtained by Eavesdropping on Cordless Telephone Conversations*, 86 Colum.L.Rev. 323, 332 n. 73 (1986); Note, *Title III Protection for Wireless Telephones*, 1985 Univ.Ill.L.Rev. 143, 150 & n. 52.

8. While we find the legislative history for the 1968 amendments to section 605 inconclusive about Congress' intent on this issue, we think it is at least consistent with the district court's interpretation. The Senate Report accompanying the legislation stated that the amendments were "not intended merely to be a reenactment of section 605," but rather "as a substitute." S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2196. We think the 1986 amendments to the Wiretap Act also indirectly support our conclusion that Congress, even in 1968, intended that Act to apply to voice communications transmitted by radio waves as well as to ones transmitted by sound waves and by wire. As amended in 1986, the Wiretap Act expressly governs voice communications transmitted by radio waves; it defines such communications, except the radio portion of a cordless telephone (in contrast to a cellular telephone) conversation, as "electronic communications" and provides for civil remedies and criminal sanctions for interceptions of such communications. *See* 18 U.S.C.A. §§ 2510–2511, 2520 (West Supp.1987).

9. Since the 1986 amendments to the Wiretap Act appear to prohibit interceptions of communications transmitted between a cellular telephone in an automobile and a line telephone, Edwards' conversation might be protected under the current version of the Wiretap Act. Our prior decision in *Bardwell* assumed, however, that because the amendments do not apply retroactively, they did not govern Edwards' claim under the Wiretap Act. For purposes of the present appeal, we likewise conclude that the 1986 amendments do not apply. We note that substantive changes in statutes, like the 1986 changes to the Wiretap Act, are generally not applicable to pending cases. *Griffon v. United States Dep't of Health & Human Services*, 802 F.2d 146 (5th Cir.1986). Especially where, as here, the question is whether Edwards had a justifiable expectation of privacy with regard to his August 1985 conversation with Martzell, we do not think the 1986 amendments could retrospectively create such an expectation.

*v. Crowley Post-Signal, Inc.,* 375 So.2d 1386, 1388 (La.1979). Recovery is limited, however, to *private* facts; as the Louisiana Supreme Court has stated, "[N]o right to privacy attaches to material in the public view." *Id.* at 1391; *see also Restatement (Second) of Torts* 652D Comment (b), at 386 (1977).

We customarily give substantial deference to the district court's determination of the law of the state in which it sits, *see Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 398 (5th Cir.1986), and we perceive no reason to depart from that practice here. Edwards' claim for invasion of privacy under Louisiana tort law is founded upon the same events that provide the basis for his claims under section 605 of the Communications Act and under the Wiretap Act. Since Edwards' conversation from the telephone in his car is not protected under either of these federal statutes, we sustain the district court's determination that Edwards has no right to recover under Louisiana tort law either. In our *Bardwell* opinion, we stated, "[T]he district court found that there was no objectively reasonable expectation of privacy in Edwards' use of his car phone. We agree." We believe that a communication to which no justifiable expectation of privacy attaches is "material in the public view" unprotected by the Louisiana law right to privacy. Consequently, we also affirm the district court's summary judgment against Edwards on his state law invasion of privacy claim.

### Conclusion

Accordingly, we affirm the district court's dismissal of Edwards' suit.

AFFIRMED.