UNITED STATES of America, Plaintiff,

v.

Larry Nathan GASS, Defendant.

No. 95–CR–55–C.

United States District Court,
N.D. Oklahoma.

Feb. 12, 1996.

Order Denying Reconsideration
Feb. 28, 1996.

James C. Lang, Sneed Lang Adams Hamilton & Parnett, Tulsa, OK, Michael D. Davis, Steven M. Harris, Doyle & Harris, Tulsa, OK, for Larry Nathan Gass.

Scott Woodward, United States Attorney, Tulsa, OK, for the U.S.

### ORDER

H. DALE COOK, District Judge.

Currently pending before the Court is the motion filed by defendant, Larry Nathan Gass, seeking judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.

On April 7, 1995, a twenty-seven Count Indictment was filed against Gass and an associate charging them with conspiracy in violation of 18 U.S.C. § 371, and sale or modification of devices intended for unauthorized interception and publication of radio communications, in violation of 47 U.S.C. §§ 605(a) and 605(e)(4). Gass filed a motion for judgment of acquittal on July 24, 1995, which was taken under advisement by the Court. A jury trial was held on July 24 through July 28. On July 28, the jury returned a verdict of guilt on each Count charged against Gass. On August 3, Gass again moved for judgment of acquittal. Sentencing has been set for February 14, 1996.

Gass moves this Court to enter judgment of acquittal on several grounds, but, in disposing of the motion, the Court need only focus upon one issue. Gass contends that his conviction is improper given the language contained in Chapter 119 of Title 18, 18 U.S.C. § 2510 *et seq.* The Court finds merit in this argument.

Gass was indicted for modifying radio equipment and selling the devices to news organizations in Tulsa, for the purpose of eavesdropping on Tulsa's trunked radio system, including all of Tulsa's police frequen-

cies and fire department communications. When the trunked system was implemented, the City of Tulsa gave specific media businesses access to certain "patrol" frequencies, but did not authorize access to "tactical" radio communications of the Tulsa police department. There is no dispute that the communications charged in the Indictment involve solely governmental communications.

Gass was charged under 47 U.S.C. § 605(e)(4), making it a crime to manufacture, assemble, modify, import, export, sell, or distribute any electronic, mechanical, or other device, knowing or having reason to know that the device is intended for any activity prohibited by 47 U.S.C. § 605(a). The government charged that Gass violated the second sentence of § 605(a), which provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." The applicability of Chapter 119 of Title 18 was not contained in the Indictment, nor was an instruction given to the jury concerning its application.

Chapter 119 of Title 18 (known as the "Wiretap Act") governs wire and electronic communications and the interception of such communications. Gass relies upon 18 U.S.C. § 2511(2)(g)(ii)(II), which provides that it shall not be unlawful to intercept any radio communication which is transmitted "by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public." Gass maintains that Chapter 119 necessarily qualifies the reach of § 605(a).

Section 605(a) begins with the introductory clause, "Except as authorized by chapter 119, Title 18,...." The government argues that this introductory clause only modifies the first sentence of § 605(a) and not the second sentence, under which Gass was charged. Gass contends that the introductory clause

modifies each and every sentence contained in § 605(a). The government suggests that if Chapter 119 applied to every sentence, an additional element would be added to § 605(a) in its entirety, requiring proof that the sender had both a subjective and objective expectation of privacy. The government argues that such would run afoul of precedent, as well as the purpose of § 605(a). The government argues that § 605(a) was intended to broaden the protection of radio communications, and that applying Chapter 119 to § 605(a) in its entirety would only serve to negate these protections. The government further maintains that Congress intended wire communications to be governed solely by Chapter 119, while leaving radio communications under the control of § 605(a).

The government does not cite any authority directly supporting its position, except for one scholarly article written in 1985 by Bruce E. Fein.[1] Fein wrote that Congress likely intended § 605(a) as opposed to Chapter 119 to govern the legality of the interception or divulgence of radio communications by persons not involved in the regular transmission of such communications. Hence, Fein asserted that § 605(a)'s introductory clause only applied to the first sentence of § 605(a), and not to the remaining sentences.[2] The government does cite some cases which tend to hold that § 605 was intended to provide considerable protection to users of radio communication devices. The same can be said, however, about the Wiretap Act, although to a more limited extent.

Gass takes the position that Chapter 119 qualifies the entire paragraph of § 605(a), thereby permitting the interception of radio communications transmitted by governmental communications systems that are readily accessible to the general public. Gass notes that Chapter 119 was amended in 1986 to specifically authorize the interception of readily accessible governmental *radio* communications. Gass contends that this

**1.** Fein, Regulating the Interception and Disclosure of Wire, Radio, and Oral Communications: A Case Study of Federal Statutory Antiquation, 22 Harv.J. on Legis. 47, 60 & 88–90 (1985).

**2.** It should be noted that Fein's article was written prior to the 1986 Amendments to Chapter

119. Included in these amendments is 18 U.S.C. § 2511(2)(g), which permits the interception of governmental *radio* communications that are readily accessible to the general public.

amendment necessarily nullifies the government's argument that Congress did not intend that the interception and divulgence of *radio* communications would be subject to the wiretap laws contained in Chapter 119.

Gass cites three Circuit cases for support, all of which hold that Chapter 119 qualifies the entire paragraph of § 605(a). In *U.S. v. Rose*, 669 F.2d 23, 26–27 (1st Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982), the First Circuit held that Chapter 119 applied to radio communications otherwise protected by § 605(a), by virtue of § 605(a)'s introductory clause. The court recognized that "the protective shield of § 605 is significantly diminished in scope by incorporating the requirements of [Chapter 119]." The court noted, however, that it was significant that Congress simultaneously added § 605(a)'s introductory clause when it passed Chapter 119 in 1968. The court cited legislative history which clearly states that "The regulation of the interception of wire or oral communications in the future is to be governed by the proposed new [Title III]." *Id.*

In *Edwards v. State Farm Ins. Co.*, 833 F.2d 535 (5th Cir.1987), the Fifth Circuit held that while "the phrase could be interpreted to preface only the first sentence of section 605, ... we think the better interpretation limits each of section 605's prohibitions to activities not authorized by the Wiretap Act." *Id.* at 540. The court went on to note that

> Under the former interpretation, activity permissible under the Wiretap Act could be prohibited under section 605 of the Communications Act. Since Congress added the introductory phrase to section 605 at the same time that it enacted the Wiretap Act, we believe Congress likely intended to make the same statutes consistent. The latter interpretation has this effect by ensuring that the interception and divulgence of a voice communication transmitted by radio waves is not prohibited by section 605 unless the communication also falls within the protections of the

Wiretap Act.... [W]e acknowledge that neither the language of section 605 nor the relevant legislative history makes it entirely clear whether Congress intended this result.... *Id.*

The Fifth Circuit reasoned that the 1986 amendments to the Wiretap Act add much support to that court's conclusion, as these amendments expressly govern voice communication transmitted by *radio* waves. The court rejected the argument contained in Bruce Fein's law review article that Chapter 119 only applies to the first sentence of § 605(a). The court noted that "[e]ven this commentator ... suggested as an alternative interpretation the one adopted by the First Circuit in *Rose*." *Id.* at 540 n. 7.[3] Additionally, the Eighth Circuit followed the lead of the First and Fifth Circuits in *Tyler v. Berodt*, 877 F.2d 705 (8th Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), which held that the requirements of Chapter 119 apply to § 605.

This Court adopts the sound position taken by these circuit courts. The Court cannot accept the arguments espoused by the government that Chapter 119 only qualifies the first sentence § 605(a). To do so would produce anomalous results, which Congress could not have intended. Thus, especially in light of the 1986 amendments to Chapter 119, the Wiretap Act does, in fact, limit the applicability of § 605(a) with respect to *radio* communications, contrary to the government's position.

The government's reading of § 605(a) contradicts the express language of Chapter 119. If this Court were to give effect to the government's argument, then the governmental radio interception exception contained in Chapter 119 makes no sense; a person would be permitted under Chapter 119 to intercept police radio transmissions only to be subject to criminal prosecution under § 605. Why would Congress impose a ban on the interception and divulgence of radio communications in one statute, while allowing for a

---

3. The Fifth Circuit also noted that other commentators have implicitly read the introductory clause of § 605(a) to modify that section in its entirety. *Edwards*, 833 F.2d at 540 n. 7. See also, Kim, Twenty–Second Annual Review of

Criminal Procedure: United States Supreme Court and Courts of Appeals 1991–92, 81 Geo. L.J. 953, 980 n. 407 (1993) (Title III has largely superseded § 605).

specific exception in another, if it did not intend for the statutes to be read together? The only way to avoid absurdity in such a case is to interpret the conflicting statutes in a manner which permits the statutes to complement one another, thereby giving effect to the specific exception.

It would seem that the maxim "specific over general" is especially applicable here. As the Supreme Court noted, a "more specific statute will be given precedence over a more general one." *Busic v. U.S.*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Since Chapter 119 specifically addresses radio communications transmitted by the government, it must control § 605(a)'s general prohibition with respect to such radio transmissions. As such, § 605(a) is qualified by the exception contained in Chapter 119 for the interception of governmental radio transmissions.

The government's fear that such an interpretation will seriously undermine the protections contained in § 605(a) is largely unfounded. Chapter 119 does serve the purpose of providing protection to radio communications, but it also contains several exceptions and additional qualifications. Concededly, § 605(a)'s protections are minimized by Chapter 119's applicability, but this result is mandated in order to harmonize two otherwise conflicting statutes.

Hence, given that this Court has determined that Chapter 119 qualifies the second sentence of § 605(a), the issue at trial should have been directed to the exception contained in 18 U.S.C. § 2511(2)(g). That is, under that section, the activities charged in the indictment against Gass cannot be criminal unless the government proves that the radio communications which Gass sought to intercept were not readily accessible to the general public.

Accordingly, since the exception contained in Chapter 119 was not presented to the jury at trial, the Court concludes that Gass' motion for judgment of acquittal must be and hereby is Granted.[4]

### ORDER ON RECONSIDERATION

Currently pending before the Court is the motion filed by the government seeking reconsideration of the Court's order granting Gass' motion for judgment of acquittal.

On April 7, 1995, a twenty-seven Count Indictment was filed against Gass and an associate charging them with conspiracy in violation of 18 U.S.C. § 371, and sale or modification of devices intended for unauthorized interception and publication of radio communications, in violation of 47 U.S.C. §§ 605(a) and 605(e)(4). Gass filed a motion for judgment of acquittal on July 24, 1995, which was taken under advisement by the Court. A jury trial was held on July 24 through July 28, 1995. On July 28, the jury returned a verdict of guilty on each of the seventeen Counts charged against Gass. On August 3, Gass again moved for judgment of acquittal. On February 12, 1996, the Court granted Gass' motion for judgment of acquittal, finding that certain issues should have been presented to the jury during Gass' trial.

The government requests that the Court reconsider its order granting Gass' motion for judgment of acquittal. In support of its motion, the government now raises many issues for the first time. Specifically, the government seeks to address the effect of the 1986 amendments to Chapter 119, 18 U.S.C. § 2510 *et seq.*[1] The Court is cognizant of the fact that the government has not previ-

---

**4.** The Court is of the opinion that the most appropriate course of action in the instant case is to proceed with a new trial in which the applicability of Chapter 119 is presented to the jury. While this is certainly the most desirable method of resolving the issues presented herein, it is not permissible in this case. Gass did not move for a new trial, and this Court is unable to order a new trial sua sponte. The Advisory Notes accompanying Rule 33 of the Federal Rules of Criminal Procedure state that the "amendments to the first two sentences make it clear that a judge has no power to order a new trial on his own motion,

that he can act only in response to a motion timely made by a defendant. Problems of double jeopardy arise when the court acts on its own motion." See also, *U.S. v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947).

**1.** The 1986 Amendments specifically provide that it shall not be unlawful to intercept readily accessible governmental radio communications. Hence, these amendments specifically extend the coverage of Chapter 119 (also known as the Wiretap Act) to *radio* transmissions.

ously responded to Gass' motions and briefs concerning the 1986 amendments to Chapter 119. Gass mentioned the 1986 amendments several times prior to the Court's order granting judgment of acquittal, and Gass even commented on a few occasions that it was curious that the government never made mention of these amendments, nor responded to Gass' reliance upon them. Now, six months after the jury returned its verdict, the government apologetically asks the Court to excuse its failure to respond to Gass' reliance upon the 1986 amendments. In its present motion, the government informs the Court that the government "incorrectly and unfortunately anticipated that the Court would afford the parties a hearing on the motion for judgment of acquittal prior to the issuance of a final order, and regretfully the government did not, therefore, apprise the Court" of information concerning the 1986 amendments which "may have been of assistance in resolving the issue at bar." The Court has much difficulty understanding why the government did not bring these matters to the Court's attention at some point during the last six months, especially when Gass explicitly raised these issues in support of his motion for judgment of acquittal. To remain virtually idle in an unjustified anticipation of a hearing for a period of months, while neglecting to brief the effect of the 1986 amendments at some point during that time period in the hope that such matters may be addressed at an "assumed" hearing, is unreasonable. Surely, the government must have known that after several months of considering Gass' motions for judgment of acquittal, a final order was imminent.[2]

The government asserts that 18 U.S.C. § 2512, like 47 U.S.C. § 605(e), criminalizes the manufacture and/or sale of electronic devices, knowing such devices render it primarily useful for the purpose of the surreptitious interception of electronic communication.[3]

2. The government now offers legislative history in an effort to show that this Court's rationale in its order granting judgment of acquittal runs counter to Congressional intent. However, the legislative history respecting 18 U.S.C. § 2511(2)(g)(ii) states that the exceptions contained therein "relate to specific types of radio communications which have *traditionally* been free from prohibitions on mere interception. Thus, it is *permissible* to intercept any radio communication which is transmitted ... by any governmental ... communications system, readily accessible to the general public." H.R. 99–647, 99th Congress 2d Session (June 19, 1986), pp. 41–42 U.S.Code Cong. & Admin.News 1986, pp. 3595–3596. Additionally, as explained, infra, Chapter 119 does not prohibit the divulgence of such legally intercepted communications. Since this Court concluded in its order granting judgment of acquittal that it would be anomalous to *specifically* exempt from punishment certain conduct in one statute while punishing that same conduct in a separate, but related statute, the Court declines to accept the government's contention that legislative history mandates a reversal of the judgment of acquittal. For further discussion concerning legislative intent, see, *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540, n. 7 and 8, (5th Cir.1987) ("We think the 1986 amendments to the Wiretap Act also indirectly support our conclusion that Congress, even in 1968, intended that Act to apply to voice communications transmitted by radio waves...." Commentators have interpreted Chapter 119 as modifying § 605(a) in its entirety.); *U.S. v. Rose*, 669 F.2d 23, 26 (1st Cir.1982), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982) (radio communications previously protected by § 605 are now governed by Title III); Kim, Twenty–Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991–92, 81 Geo.L.J. 953, 980 n. 407 (1993) (Title III has largely superseded § 605, and § 605 does not apply to communications intercepted and disclosed under Title III).

3. The government seems to suggest that since Gass was convicted of manufacturing and selling devices, rather than intercepting and divulging the communications, Gass' conviction should stand because "federal law is replete with examples of statutes which criminalize the manufacture of items while leaving legal the use of such items." However, this argument fails to recognize that § 605(e) does not make it criminal to manufacture and sell devices unless the defendant knows or has reason to know that such device is intended for a use that is prohibited by § 605(a). Thus, if the interception and divulgence of certain communications is not prohibited § 605(a), then the manufacture and sale of devices designed to intercept such communications is not prohibited by § 605(e). As such, contrary to the government's suggestion, this is not a case in which the particular federal law "criminalize[s] the manufacture of items while leaving legal the use of such items." Rather, § 605(e)'s prohibition on manufacturing is inextricably linked to § 605(a)'s prohibitions on intercepting and disclosing. Hence, if the communications at issue are protected by § 605(a), then § 605(e) prohibits Gass from manufacturing and selling items designed to intercept and disclose such communications, and, furthermore, Gass, himself, cannot legally use the item for such purposes.

The government therefore seems to suggest that since the jury, in finding Gass guilty under § 605(e), determined that Gass committed certain activities, and since these same activities may similarly constitute a violation of § 2512 under Chapter 119, Gass' conviction should stand under § 605(e) even if Chapter 119 applies. This argument is meritless. Gass was not charged under § 2512, the jury did not convict Gass under § 2512, and this Court cannot now find Gass guilty of violating § 2512. This Court must focus on the statute under which Gass was convicted and determine if Gass' conviction is permissible under that statute. In the instant case, Gass was convicted under 47 U.S.C. § 605. For the reasons stated below, the Court concludes that Gass' conviction under § 605 must be set aside. Hence, the fact that Gass' activities may have amounted to a violation under 18 U.S.C. § 2512 is irrelevant. If the government desired to proceed against Gass under § 2512, it should have done so.

The Court, in its order granting judgment of acquittal, concluded that § 605(a) and Chapter 119 are inconsistent, and that, especially in light of § 605(a)'s introductory clause, Chapter 119 qualifies § 605(a). The government, however, argues that § 605(a) and Chapter 119 can be readily reconciled.[4] The government states that "§ 2511(2)(g)(ii)(II) permits interception, and only when the radio communications are readily accessible to the general public. Section 605(a) ... criminalizes interception only

when there is an actual divulgence or publication. The wiretap provisions are not in conflict with section 605(a) because section 605(a) requires proof of the additional element of divulgence or publication." The government therefore contends that since the jury found Gass guilty of engaging in conduct with the purpose of intercepting *and* divulging radio communications, Gass' activities went beyond the scope of the interception exception contained in § 2511(2)(g)(ii)(II). Thus, since the act of divulging the communications at issue is not an excepted activity under Chapter 119, § 605(a)'s prohibitions remain unqualified in the instant case. The Court does not agree.

Chapter 119 generally prohibits the interception of any oral or electronic communication, which, by definition, includes radio signals. 18 U.S.C. §§ 2510 and 2511(1)(a). Chapter 119 also generally prohibits the intentional disclosure or use of oral or electronic communications where the person knows or has reason to know that the communication was intercepted in violation of subsection 2511(1). 18 U.S.C. § 2511(1)(c) and (d). Conversely, § 2511 does not generally prohibit the divulgence of communications which are legally intercepted. *Any* "electronic communication" that is "readily accessible to the general public"[5] may be intercepted.[6] 18 U.S.C. § 2511(2)(g)(i). Moreover, any governmental "radio communication" that is "readily accessible" to the general public may be intercepted, regardless of any expectation of privacy.[7] 18 U.S.C. § 2511(2)(g)(ii)(II).

---

4. The government, however, concedes that the "issue before the Court is decidedly close and complex." Thus, the government necessarily acknowledges that a good deal of doubt remains as to whether its interpretation of the law is correct in this case. It is well-settled that criminal statutes, especially when ambiguity exists, must be strictly construed against the government, and any doubts must be resolved in favor of the defendant. See, for example, *U.S. v. Bramblett*, 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955) (the proposition that criminal statutes are to be strictly construed is one that calls for the citation of no authority); *U.S. v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971) (where ambiguity exists in a criminal statute, doubts are resolved in favor of the defendant).

5. "Readily accessible to the general public" is a defined phrase in 18 U.S.C. § 2510(16).

6. Since the exception contained in § 2511(2)(g)(i) applies only to "electronic communications," the exception does not apply to any "oral communications," including radio signals, where there is a subjective and objective expectation of privacy. 18 U.S.C. § 2510(2) and (12). Hence, if an operator of a radio has a subjective and objective expectation of privacy, then § 2511(2)(g)(i) would not permit interception.

7. Section 2511(2)(g)(ii) uses the language "radio communication" rather than "electronic communication." The phrase "electronic communication" includes radio communications in general, but it does not include "oral communications," which are defined as communications

Since it is not a violation under § 2511 to intercept readily accessible governmental radio communications, § 2511(1)(c) and (d) do not prohibit divulgence or use of such communications.

If a governmental radio communication is "readily accessible to the general public," then where is the harm in intercepting it and divulging the contents of the communication? Chapter 119 recognizes this by not prohibiting the interception and divulgence of such "readily accessible" governmental "radio communications." Furthermore, whenever a "readily accessible" message is sent out over the airways, it is essentially "divulged" to the public.[8] Presumably, anyone using a lawful device, in a lawful manner, can receive "readily accessible" radio communications.[9] Section 2511(1)(e) is also noteworthy in that it prohibits the *disclosure* of certain communications which are otherwise legally intercepted. Significantly, § 2511(1)(e) does not prohibit the disclosure of communications le-

gally intercepted under the exceptions contained in § 2511(2)(g). If Congress desired to prohibit the divulgence of radio communications legally intercepted pursuant to § 2511(2)(g), it could have easily done so in § 2511(1)(e).

Since this Court has accepted the position taken by the First, Fifth, and Eighth Circuits[10] that Chapter 119 qualifies § 605(a), and that these two statutes must be read together,[11] the question of whether the governmental communications at issue were "readily accessible to the general public" should have been presented to the jury.[12] This conclusion comports with the language in *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540 (5th Cir.1987), that "the *interception and divulgence* of a voice communication transmitted by radio waves is not prohibited by section 605 unless the communication also falls within the protections of the Wiretap Act" (emphasis added).[13] Since the Court

8. exhibiting an objective and subjective expectation of privacy. Section 2511(2)(g)(i) does not therefore permit interception of "oral communications." However, it is significant that § 2511(2)(g)(ii) refers to "radio communications," rather than "electronic communications." Congress apparently did not intend for the expectation of privacy issue to apply to governmental radio communications. If Congress had intended such a result, it would have used the phrase, "electronic communications," when carving out the exception for the interception of governmental transmissions, rather than using the phrase, "radio communications." Hence, it is not unlawful to intercept any governmental "radio communication" that is readily accessible, even if the speaker had an objective and subjective expectation of privacy.

8. The use of the phrase "readily accessible to the *general public*" in § 2511(2)(g)(ii)(II)'s exception also connotes Chapter 119's recognition that if a governmental radio signal is made accessible to the *general public*, then such signal is, in essence, divulged to the general public. As such, the radio signal is afforded no protection against interception, nor is further divulgence prohibited. If governmental operations desire protection in the transmission of radio signals, all that is required is some form of mechanism to take the signal out of the definition of being "readily accessible to the general public."

9. Thus, the Court does not accept the government's argument that interception is permissible but divulgence is unlawful. It would make little sense to expressly permit "any person" to inter-

cept a readily accessible governmental radio communication, but then prohibit further divulgence of that communication to others who could have easily, and lawfully, intercepted that communication in the first place, had they been utilizing proper equipment.

10. See this Court's Order granting judgment of acquittal, pages 5–6.

11. The House Report states that the "Committee has drafted the present Act (18 U.S.C. § 2510 *et seq.*) with an eye to its interplay with Section 705(a) of the Communications Act of 1934." H.R. 99–647, 99th Congress 2d Session (June 19, 1986), p. 41 U.S.Code Cong. & Admin.News 1986, p. 3595.

12. As the jury found, § 605(a), read in isolation, prohibits the interception and divulgence of the communications at issue. However, reading § 605 together with Chapter 119 leads to the conclusion that the interception and divulgence of readily accessible governmental radio communications are excepted from § 605(a)'s prohibitions. As the Court previously determined, this conclusion is necessary both in light of § 605(a)'s introductory clause and in order to avoid anomalous results.

13. See also, *U.S. v. Rose*, 669 F.2d 23, 26–27 (1st Cir.1982), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The First Circuit held that "§ 605 does not apply to communications that may be intercepted and disclosed under Title III." The court noted that although "Congress

recognizes that "readily accessible" governmental "radio communications" *do not* fall within the protections of Chapter 119, as they are expressly excepted from that Chapter's general prohibitions, the interception and divulgence of such communications is not prohibited by virtue of § 605. Hence, the jury should have been presented with the question of whether the communications at issue were "readily accessible to the general public," as that phrase is defined in Chapter 119. The Court cannot, and need not, make the determination as to whether such communications were, in fact, readily accessible. It is sufficient to sustain the Court's order granting judgment of acquittal that the jury was not presented with this issue.

Accordingly, the government's request that the Court reinstate Gass' convictions is hereby DENIED.

did not explicitly recognize that the amendment [to 605(a)] would allow the interception and disclosure of radio communications previously protected, the legislative history states clearly that 'The regulation of the interception of wire or oral communications in the future is to be governed by the proposed new (Title III).' " The court additionally stated that "the statutory mandate contained in 'except as authorized by (Title III)' cannot be avoided."