J & J SPORTS PRODUCTIONS, INC., Plaintiff,

v.

Sylvia Esther MORALES d/b/a Joseph's Lounge, Defendant.

EP–15–CV–367–PRM

United States District Court, W.D. Texas, El Paso Division.

11/07/2016

Daniel Salvador Gonzalez, El Paso, TX, David M. Diaz, The Korn Diaz Firm, Dallas, TX, for Plaintiff.

Enrique Lopez, Law Office of Enrique Lopez, El Paso, TX, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Plaintiff J & J Sports Productions, Inc.'s "Motion for Summary Judgment and Brief in Support" (ECF No. 18) [hereinafter "Motion"], filed on October 10, 2016, and Defendant Sylvia Esther Morales's "Response to Motion for Summary Judgment and Brief in Support" (ECF No. 19) [hereinafter "Response"], filed on October 20, 2016, in the above-captioned cause. After due consideration, the Court is of the opinion that the Motion should be denied for the reasons that follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts that it was exclusively authorized to sub-license "the closed-circuit telecast" of the December 8, 2012 Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Championship Fight Program, including undercard or preliminary bouts [hereinafter the "Event"] ... "at closed circuit locations such as ... bars, clubs, lounges and the like throughout the State of Texas." Mot. Ex. A., at 2. This sub-license does not include any rights in Mexico. Mot. Ex. A–1 (providing a copy of the license agreement). Plaintiff attests that commercial establishments could contract with Plaintiff to show the Event for a sublicense fee. Mot. Ex. A–3, at 1.

On the night of the Event, Plaintiff's Auditor entered Defendant's establishment Joseph's Lounge. See Mot. Ex. A–2, at 1. Once inside, Plaintiff's Auditor witnessed the telecast of the Event. Id. Defendant acknowledges she did not pay the licensing fee for the Event, which was shown at Joseph's Lounge. See Mot. Ex. C.

Although Defendant concedes that she broadcasted the Event at Joseph's Lounge, she contends that it was broadcasted via TV Azteca—an over-the-air television channel disseminating from the neighboring city of Ciudad Juárez, Chihuahua, Mexico—on a delayed basis. See Resp. Ex. A, at 2. Defendant denies that she ever unlawfully intercepted the closed-circuit broadcast of the Event. Resp. 2.

Presently, Plaintiff seeks summary judgment against Defendant for violations of either 47 U.S.C. §§ 553 or 605. Mot. 1.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (quoting *Latimer v. Smithkline French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)). If the moving party has satisfied its initial burden, the non-movant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). While a court will resolve factual controversies or disputes in the non-movant's favor, it must do so "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

### A. Violation of 47 U.S.C. § 605

█ Plaintiff alleges that the Event "originated via satellite." Mot. Ex. A., at 2. The relevant portion of § 605(a), however, addresses only the unauthorized interception or receipt of *radio* communications:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).[1]

The Fifth Circuit addressed similar arguments regarding the same Plaintiff in *J & J Sports Productions, Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346 (5th Cir. 2014). Plaintiff sought relief based upon the same § 605 violations arising under similar circumstances. *Mandell*, 751 F.3d at 347. The Fifth Circuit stated that "§ 605 address[es] *only* the unauthorized interception or receipt of *radio* communications." *Id.* at 351 (emphasis added). The *Mandell* court concluded that "receipt or interception of communications by wire from a cable system" was outside the scope of § 605. *Id.*

Here, Defendant contends that she used an over-the-air television channel from Mexico. *See* Resp. Ex. A, at 2. The Wire or Radio Communication Act provides dis-

---

1. The first sentence of § 605 also refers to the divulgence or publication of "communication by wire or radio." The Fifth Circuit has recognized that this first sentence is inapplicable in the piracy context because it does not refer to the unauthorized interception or receipt of communications, and it is understood as "regulat[ing] the conduct of communications personnel." *Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540 (5th Cir. 1987).

tinct definitions for "television service" and "radio communication." *Compare* § 153(56) (defining "analog television service" and "digital television service") *with* § 153(40) (defining "radio communication" as the "the *transmission by radio* of [communications] of all kinds, including all instrumentalities, facilities, apparatus, and services ... incidental to such transmission" (emphasis added)).

"Congress clearly defined both radio and [television service], it presumably would have included the word [television service] in the applicable sentences of § 605 if it intended for them to apply to the communications at issue here." *Mandell*, 751 F.3d at 352 (citation omitted). In post–*Mandell* cases, other district courts have similarly found that § 605 is limited to radio communications. *See e.g., J & J Sports Prods., Inc. v. (1) Mesa St. Bar & Grill, LLC*, No. EP–13–CV–00302–DCG, 2014 WL 12540467, at *4 (W.D. Tex. Sept. 24, 2014); *J & J Sports Prods., Inc. v. KCK Holdings, LLC*, No. CV 14–00269–BAJ–RLB, 2015 WL 7195770, at *3 (M.D. La. Nov. 16, 2015).

As such, the *Mandell* holding mandates that summary judgment be denied with respect to Plaintiff's claim for violations of § 605.

## B. Violation of 47 U.S.C. § 553

 The Court will deny Plaintiff's Motion regarding § 553 for two reasons: (1) statutory interpretation could compel a favorable result for Defendant and (2) there is a genuine dispute of material fact. First, § 553 specifies that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service *offered over a cable system*, unless specifically authorized to do so." 47 U.S.C. § 553(a)(1) (emphasis added). Section 553 presents two plausible readings as this statute merely specifies that the communications be "*offered* over a cable system" to

trigger liability—neither of which have been briefed by the parties. *See id.* (emphasis added). One reading could support liability even if a defendant did not intercept a broadcast from the cable system, so long as the broadcast was also *available* from a cable system. *See id.* Another reading could excuse liability if a defendant intercepted a broadcast directly *offered* from television services. *See id.*; *see also* § 153(56) (defining "analog television service" and "digital television service"). Unlike in prior cases, Defendant's testimony, taken as true, could convince a fact finder that she did not intercept the Event from a cable system, but instead from a foreign television channel—a contention substantiated by affidavit testimony. *Cf. J & J Sports Prods., Inc. v. El 33, LLC*, No. EP–11–CV–519–KC, 2013 WL 164521, at *5 (W.D. Tex. Jan. 14, 2013) (finding that defendant's allegation that event was air broadcast from Azteca TV was "unsubstantiated by affidavit testimony, documentary evidence, or any other form of proof").

 Second, Plaintiff has failed to provide evidence that it can enforce its sublicense against an individual that broadcasts from a foreign country. "A license gives one party the right to use another party's mark (i.e., to engage in otherwise infringing activity), generally in exchange for a royalty or other payment." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 364 (5th Cir. 2004). Nevertheless, a party cannot enforce a license it does not control. *See id.*

Plaintiff's own evidence indicates that its rights to license the broadcast of the Event "do not include any rights in ... Mexico." Mot. Ex. A–1 (providing a copy of the license agreement) (underline in original). Therefore, if Defendant did intercept a signal broadcasting the Event from Mexico, it was not a broadcast that Plaintiff

had the authority to license. *See Brennan's Inc.*, 376 F.3d at 364. While Plaintiff has offered evidence that it had the exclusive rights to license the Event in Texas, it has not offered evidence that Defendant was unauthorized to receive the allegedly unfettered broadcast from a Mexican television station. "[R]eview[ing]the facts [and] drawing all inferences most favorable to the party opposing the motion[,]" the Court cannot grant a motion for summary judgment given the deficient record. *See Reid*, 784 F.2d at 578.

## IV. CONCLUSION

To be sure, in the typical situation,

[T]he transmission [would be] electronically coded or scrambled to safeguard it against unauthorized interception or receipt and therefore required using an unauthorized cable or satellite service and illegally altering the cable or satellite service or moving an unauthorized decoder or satellite card from its authorized location to the [e]stablishment [and] ... [a defendant could not] have innocently accessed the broadcast of the [e]vent; [a defendant] had to act specifically and willfully to illegally intercept the transmissions.

*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F.Supp.3d 747, 755 (S.D. Tex. 2014). Defendant's account of the facts of this case falls well outside this typical situation. *See id.* Neither party has adequately developed the statutory scheme, the relevant case law, nor the evidentiary record as it applies to the facts of this case. Moreover, the factual scenario described by Defendant and supported by her affidavit is one that calls into dispute her liability.

Accordingly, **IT IS ORDERED** that Plaintiff J & J Sports Productions, Inc.'s

"Motion for Summary Judgment and Brief in Support" (ECF No. 18) is **DENIED**.